60 So.2d 496 (1952)
FIRST FEDERAL SAVINGS & LOAN ASS'N OF MIAMI
v.
FISHER et al.
Supreme Court of Florida, en Banc.
June 27, 1952.
Rehearing Denied August 7, 1952.
Blackwell, Walker & Gray, Miami, for appellant.
Morton Rothenberg, Miami Beach, for appellees.
CHAPMAN, Justice.
On September 16, 1939, a final decree of divorce and property settlement was entered in the Circuit Court of Dade County, Florida, in the case of Freda Y. Fisher v. Porter G. Fisher. The following pertinent provisions are set out in the final decree:
"This cause coming on to be heard before me upon the special Master's Report of testimony, his findings of fact, conclusions of law and recommendations, and it appearing to the Court that the defendant has appeared and filed his answer herein and that the Court has jurisdiction over the parties hereto and the subject matter hereof, and it further appearing that the complainant has, by her proof of evidence, sustained the allegations contained in her Bill of Complaint, and that the complainant is entitled to the relief as prayed for in and by her said Bill of Complaint, and the Court having examined the entire record and being otherwise fully advised in the premises, it is hereby
"Ordered, adjudged and decreed that the Special Master's report of testimony, findings of fact and conclusions of law be, and the same are hereby, in all respects fully approved and confirmed; and it is further hereby
"Ordered, adjudged and decreed that the bonds of matrimony heretofore and now existing between complainant, Freda Y. Fisher, and the defendant, Porter G. Fisher, be and the same are hereby forever dissolved, and that the complainant and defendant are hereby divorced one from the other, a vinculo matrimonii; and it is hereby further
"Ordered, adjudged and decreed that the agreement heretofore entered into by and between the complainant and defendant herein, dated September 11, 1939, providing for the matters of custody of the child, P. Graham Fisher, his *497 maintenance, the matters of alimony and property settlements, be and the same is hereby in all respects approved and for the purpose of enforcing the provisions thereto, and by virtue of said provisions, it is
"Ordered, adjudged and decreed that the custody of the son of complainant and defendant, P. Graham Fisher, shall remain with the mother, subject, however, to the right of the father to see him at all reasonable times."
The following stipulations signed by Freda Y. Fisher and husband, Porter G. Fisher, were before the Court at the time of the entry of the divorce decree and property settlement on September 16, 1939, to-wit:
"It is stipulated by and between the undersigned complainant and defendant and their respective solicitors in the above styled cause that, if a final decree of divorce is entered, said decree shall contain the following provisions:
"1. That the custody of the son of complainant and defendant, P. Graham Fisher shall remain with the mother subject, however, to the right of the father to see him at all reasonable times.
"2. That defendant is to provide for his said son's schooling and medical and dental services and, in addition thereto, shall pay to the mother, complainant herein, Fifty ($50.00) Dollars a month for the support of the said son.
"3. That defendant shall keep in full force and effect the life insurance policy of Five Thousand ($5,000.00) Dollars on the life of the son P. Graham Fisher until he arrives at the age of twenty-one years; and the defendant shall also keep in full force and effect an insurance policy for Forty Thousand ($40.000.00) Dollars on the life of the defendant in which policy the said son is beneficiary.
"4. Further, defendant is to pay the complainant as alimony the sum of One Hundred ($100.00) Dollars a month.
"5. The payments of the son's maintenance and the alimony to the complainant shall both be paid to the complainant semi-monthly, to-wit: on the first and fifteenth of each month respectively.
"6. Defendant is also to maintain the house at 531 49th Street, Miami Beach, Florida for a home for the complainant and her son. The defendant paying for the up-keep of said house such as taxes, fire and windstorm insurance, water, lawn, and in addition, all repairs necessary to be made to said house in order to keep said house in good condition. In the event said house is sold, defendant shall pay to the complainant half of the sum of the money realized in the sale of the said house, and in addition thereto, shall provide another home suitable to her station in life. In the event said house above mentioned shall be rented, then the defendant shall provide for the complainant and her son another home in keeping with her station in life and shall, in that event, maintain said home in all respects as here above set out. The furniture and the furnishings in the house at 531 49th Street above mentioned shall be the property of both complainant and defendant, except that, if said house is sold as furnished, then, in that event, defendant shall provide such other furniture that will be required by the complainant, such as will be suited to her station in life.
"7. In the event defendant dies or remarries, then, in that event the defendant's interest in the house shall be conveyed to the son P. Graham Fisher.

"8. The defendant shall provide the complainant with an automobile of the type and kind in keeping with her station in life. Further it is agreed between the parties that all mutual holdings of all personal property and real property shall be either sold or partitioned and proceeds divided between complainant and defendant. However, this paragraph shall not apply to the resident mentioned in this case.

*498 "9. It is further agreed that, in the event of any illness arising concerning the son, P. Graham Fisher, that the defendant shall be kept fully informed and shall be consulted from the outset and shall, except in the case of serious emergency, have the right, if he so chooses, to make all the arrangements for all medical, surgical and dental services." (Emphasis supplied).
Some two or three months after the date of the decree, on November 13, 1939, Porter G. Fisher remarried and the second wife was Alma F. Fisher. On July 19, 1946, Porter G. Fisher and wife, Alma F. Fisher, made, executed and delivered their promissory note in the sum of $10,400 payable to the First Federal Savings and Loan Association of Miami. Simultaneously with the execution and delivery of the aforesaid promissory note they secured the payment thereof by execution of a mortgage to the Federal Savings Bank, which described the home owned by Porter G. Fisher located at 531 49th Street, Miami Beach, Florida. The mortgage was duly recorded in the office of the Clerk of the Circuit Court of Dade County, Florida. The home described in the mortgage supra was in the possession of Freda Y. Fisher and son, Porter G. Fisher, Jr., when the note and mortgage were executed by the husband, Porter G. Fisher, Sr., and the second Mrs. Fisher (Alma F. Fisher). It appears that the first Mrs. Fisher and son occupied the home pursuant to the divorce stipulations made a part of the final decree.
The Federal Savings and Loan Association, on February 9, 1949, filed foreclosure proceedings on the mortgage given it by Porter G. Fisher and wife, Alma F. Fisher. The proceeding progressed to a final decree, when the property was sold by a Special Master, and a Special Master's deed was executed conveying the residential property supra to the First Federal Savings and Loan Association. On June 25, 1950, Freda Y. Fisher filed in her divorce suit her motion for a final decree for arrears in support and also to enforce the provisions of paragraph 7 of the stipulations, to-wit: "7. In the event defendant dies or remarries, then, in that event, the defendant's (Porter G. Fisher's) interest in the house shall be conveyed to the son P. Graham Fisher." The Chancellor below heard the parties on the motion and other appropriate pleadings and entered its order requiring Porter G. Fisher to convey his right, title and interest in the home occupied by Freda Y. Fisher and son situated at 531 49th Street, Miami, Florida, in accordance with the provisions of Section 7 supra of the stipulations signed by the parties when the divorce decree was entered. On May 25, 1951, Porter G. Fisher and wife, Alma F. Fisher, executed and delivered to Porter G. Fisher, Jr., a deed to the described property, pursuant to an order or decree of the Court below. It was recorded among the public records of Dade County, Florida, on June 4, 1951.
On August 15, 1951, Porter G. Fisher, Jr., filed in the Circuit Court of Dade County, Florida, his suit to quiet title as against the First Federal Savings and Loan Association and alleged that the Special Master's deed acquired by it through the foreclosure of its mortgage was subject to, inferior and subservient to the title conveyed to Porter G. Fisher, Jr., by his father, Porter G. Fisher, Sr., and wife, Alma F. Fisher, and said conveyance was a cloud which created doubt and suspicion as to the true fee simple title held and owned by Porter G. Fisher, Jr. That the title conveyed by the Special Master to the Federal Savings and Loan Association was made with full knowledge and notice of the provisions described in Section 7 of the divorce stipulation, which was approved and confirmed by the final decree of divorce. Section 7 thereof could have been ascertained by an examination of the final decree of divorce duly recorded among the public records of Dade County, Florida. Also, Freda Y. Fisher and son, Porter G. Fisher, Jr., were in the open, adverse and continuous possession of the home and were residing therein prior and subsequent to the date of giving the note and mortgage to the Savings Association. The Chancellor, by an appropriate decree, cancelled the Special Master's deed to the First Federal Savings and Loan Association as a cloud upon title *499 as held by Porter G. Fisher, Jr. The Federal Savings and Loan Association appealed.
On this appeal counsel for the appellant Association contend that provision 7, supra, of the marriage agreement, which was approved and confirmed by the terms of the final decree of divorce entered between Freda Y. Fisher and husband Porter G. Fisher, Sr., was legally insufficient to constitute notice, implied or constructive, of the claims and interest of Porter G. Fisher, Jr., in and to the described property, although Fisher, Sr., had not lived or resided in the home from 1939 until giving the mortgage on July 16, 1946. He remarried within ninety days after the divorce decree was entered. It was the Chancellor's conclusion that the divorce decree and divorce stipulation were legally sufficient to constitute lawful notice of the interest of Porter G. Fisher, Jr., in and to the described property.
In the case of Sapp v. Warner, 105 Fla. 245, 141 So. 124, 143 So. 648, 144 So. 481, we held that notice is of two kinds: actual and constructive. Constructive notice has been defined as notice imputed to a person not having actual notice, for example: such as would be imputed under the recording statutes to persons dealing with property subject to those statutes. Actual notice is also said to be of two kinds: first, express, which includes what might be called direct information and, second, implied, which is said to include notice inferred from the fact that the person had means of knowledge, which it was his duty to use and which he did not use, or as it is sometimes called implied actual notice. Constructive notice is a legal inference, while implied notice is an inference of fact, but the same facts may sometimes be used to prove both constructive and implied actual notice. The foregoing rule has been reaffirmed by this Court. See Rinehart v. Phelps, 150 Fla. 382, 7 So.2d 783.
The record reflects that Porter G. Fisher, Sr., under the terms of the divorce agreement, was to provide his first wife and son with a home and furnishings. It is not disputed that they lived in the original home of the parties located at 531 49th Street, Miami. It is not contended that P. Graham Fisher, Sr., ever lived in the home after the divorce decree, but married again within approximately three months thereafter. If the appellant had made inquiry as to the possession of the property upon which it later made a loan of $10,400 and accepted a mortgage, the fact would have developed that P. Graham Fisher, Sr., was not in possession of the property but the possession thereof was in his divorced wife. Under these circumstances we are forced to hold that the appellant failed to exercise, in the acceptance of the note and mortgage that degree of care as the law imposed upon it.
Another theory of the case is that the appellant, by searching the records in the office of the Clerk of the Circuit Court of Dade County, Florida, would have found the divorce decree and property settlement appearing upon the record, and a provision thereof which is viz.: "Ordered, adjudged and decreed that the agreement heretofore entered into by and between the complainant and defendant herein, dated September 11, 1939, providing the matters of custody of the child, P. Graham Fisher, his maintenance, the matters of alimony and property settlements, be and the same is hereby in all respects approved * * *."
It is our view and conclusion that the decree appealed from should be and it is hereby affirmed on the authority of Sapp v. Warner, supra.
Affirmed.
TERRELL, ROBERTS and MATHEWS, JJ., concur.
SEBRING, C.J., and THOMAS and HOBSON, JJ., dissent.