RENEL CONSTRUCTION INC., Respondent, v BROOKLYN COOPERATIVE MEAT DISTRIBUTION CENTER INC., Respondent, and CITY OF NEW YORK, Appellant. (Action No. 1.)

DEPOT CONSTRUCTION CORP., Respondent, v CITY OF NEW YORK, Appellant, et al., Defendants. (Action No. 2.)

First Department, November 15, 1977

392

### APPEARANCES OF COUNSEL

*Leonard Olarsch* of counsel *(L. Kevin Sheridan* with him on the brief; *W. Bernard Richland, Corporation Counsel)*, for appellant in first above-entitled action.

*Jerrold Morgulas* of counsel *(M. Carl Levine, Morgulas & Foreman,* attorneys), for Renel Construction, Inc., respondent.

*Leonard Olarsch* of counsel *(L. Kevin Sheridan* and *Donald J. Dawidoff* with him on the brief; *W. Bernard Richland, Corporation Counsel)*, for appellant in second above-entitled action.

*Franklin E. Tretter* of counsel *(K. Richard Marcus* with him on the brief; *McDonough Schneider Marcus Cohn & Tretter,* attorneys), for Depot Construction Corp., respondent.

### OPINION OF THE COURT

SILVERMAN, J.

These actions arise out of contracts for the construction of co-operative meat markets in the City of New York in the Boroughs of The Bronx and Brooklyn.

### Depot Construction Corp. v City of New York

In the Depot Construction Corp. ("Depot") case, plaintiff Depot seeks to recover unpaid construction costs, as well as damages for delay, interference with performance, etc., from Hunts Point Cooperative Market, Inc. ("Hunts Point Coop"), the lessee, and the City of New York ("city"), the owner of the fee, and other defendants. The city appeals from an order of Special Term denying its motion to dismiss certain causes of action in the complaint as against the city pursuant to CPLR

3211 (subd [a], par 7). We think the motion should have been granted as to all the causes of action here involved.

Pursuant to a plan to develop a co-operative market at Hunts Point in The Bronx, certain contracts and leases were entered into by the parties. The city, as owner of the real property, entered into a lease with defendant Hunts Point Coop as lessee for a period of 20 years with three 10-year renewal options. Hunts Point Coop was to construct a meat processing and distribution facility and the city agreed to reimburse Hunts Point Coop for its construction expenses as the work progressed. The market was to become the property of the city. The stockholders of Hunts Point Coop were to be persons engaged in the meat business, who presumably would use the market facilities.

Hunts Point Coop entered into separate construction contracts, one of them with plaintiff Depot. Plaintiff's contract called for a total lump-sum contract price of $13,740,000, ultimately adjusted upward to $13,783,322. After a great deal of work was done, for which plaintiff was paid $12,863,120, the work ceased for reasons which are, in part, in dispute. Plaintiff contends that there is a balance due it for contract work in the sum of $920,202, plus extras, for which the price had not been agreed upon, amounting to $459,859, and in addition plaintiff suffered damages of $4,200,000 caused by delays and prevention of work for which defendants were responsible, and $47,031 for premiums paid.

■ ■ As to the causes of action based on the express contracts, it is clear that the contracts on their face do not obligate the city to pay to plaintiff these construction costs; rather plaintiff's contract with Hunts Point Coop requires Hunts Point Coop to pay the plaintiff and Hunts Point Coop's contract with the city requires the city to reimburse Hunts Point Coop. It is the contention of the plaintiff, however, that in these transactions Hunts Point Coop was merely the agent of the city and that the city therefore, as principal, is liable to plaintiff on familiar agency principles. In our view, it is unnecessary to consider whether an agency relationship can be spelled out. For even where there is an agency relationship, the parties may agree that only the agent and not the principal shall be responsible.

"Even where the principal is disclosed, the parties are of course quite free to alter by agreement the normal incidence of liability; this 'normal incidence' results either from what

they have said or from what it is to be supposed they would naturally intend. If they intend something else their intent will be given effect, if legal (and if the contract is not in writing and their intent does not conflict with the legal interpretation of the writing). Thus the parties may agree that only A shall be liable, or that P and A shall both be liable, jointly or with A (or P) in the position of a surety." (Mechem, Outlines of Law of Agency [4th ed], § 297; accord Restatement, Agency 2d, § 147.) Notwithstanding the absence of an express provision to that effect, we think that the effect of this complicated arrangement, all set forth in writings with separate contracts and with full knowledge on the part of all parties as to who was obligating itself to what, was an agreement that Hunts Point Coop and not the city should be liable to plaintiff on the contract for plaintiff's construction costs. We do not ignore the fact that the city's participation was an important economic factor in the case, which may have important legal consequences; e.g., if plaintiff recovers a judgment against Hunts Point Coop and it is unable to meet that judgment, plaintiff, as a judgment creditor of Hunts Point Coop, may be able to enforce the city's obligation to Hunts Point Coop (see CPLR 5201, subd [a]; 5227); or, perhaps, Hunts Point Coop, sued by plaintiff, may have a third-party claim over against the city; or, conceivably, plaintiff may even have a quasi-contract claim against the city for unjust enrichment. (We pass on none of these possible legal theories at this time.) But plaintiff does not have a right to enforce the contract with Hunts Point Coop against the city as if the contract were with the city. Accordingly, the first, second and third causes of action, all sounding in express contract, must be dismissed.

█ In its amended complaint, plaintiff has added a ninth cause of action alleging that the city's agreement in its contract with Hunts Point Coop to reimburse Hunts Point Coop for the cost of its construction was for the benefit of plaintiff and that by reason of that third-party beneficiary agreement, the city owes plaintiff the various sums sued upon. We think it is settled law that plaintiff is not a third-party beneficiary within the rule permitting third-party beneficiaries to sue on contracts but is rather "merely an incidental beneficiary with no right to enforce the particular contracts." *(Port Chester Elec. Constr. Corp. v Atlas,* 40 NY2d 652, 655.) And, accordingly, the ninth cause of action must be dismissed.

The fourth, fifth and sixth causes of action apparently do

not rest on a claim that the city is a party to the contract with plaintiff.

■ The fourth cause of action alleges improper delays, and preventing plaintiff from performing the contract work in time, and negligent interference with the plaintiff in the performance of its work. The fifth cause of action, alleges that defendant city "wrongfully, improperly and negligently interfered with the plaintiff" in the performance of its contract by "influencing, directing and causing the defendant Cooperative to breach its contract with the plaintiff." Apart from the conclusory nature of these allegations, there is not, even in conclusory form, the allegation that would be necessary to hold a person who is not a party to the contract liable, that the city intentionally and unjustifiably interfered. Accordingly, these causes of action must be dismissed.

The sixth cause of action realleges the first five and alleges that plaintiff has incurred bond premiums which it seeks to recover. The sixth cause of action must fall with the first five.

However, the dismissal of the fourth, fifth and (insofar as it rests on the fourth and fifth) the sixth causes of action being for pleading defects only, the dismissal of those causes of action is without prejudice to an appropriate application by plaintiff to Special Term for leave to plead again as to these causes of action. (CPLR 3211, subd [e].)

The seventh and eighth causes of action relate to applications to foreclose a private mechanic's lien and a public mechanic's lien, respectively. These causes of action are not involved in the present appeal.

## Renel Construction Inc. v Brooklyn Cooperative Meat Distribution Center Inc.

The Renel Construction Inc. ("Renel") case involves again a plan for the development of a co-operative meat distribution center, this time in Brooklyn, with again separate contracts between the City of New York ("city") and the lessee co-operative, Brooklyn Cooperative Meat Distribution Center Inc. ("Brooklyn Coop"), on the one hand, and between Brooklyn Coop and the plaintiff construction corporation Renel, on the other. Here, the city, as owner of the real property, entered into a lease for 30 years with two 10-year renewal options in Brooklyn Coop. Provisions as to the reimbursement by the city of Brooklyn Coop's construction expenses and ownership of

the facility itself were similar to those in the city-Hunts Point Coop contract.

Plaintiff seeks to recover $241,716 in unpaid construction costs, and $948,554 damages for delay arising out of interference with performance and failure to co-ordinate the work of other prime contractors on the same project. Defendant city appeals from Special Term's order which denied the city's cross motion to dismiss the complaint pursuant to CPLR 3211 (subd [a], par 7) and granted partial summary judgment to plaintiff Renel directing the return to plaintiff of $220,000 of New York City bonds deposited with the city in lieu of retainages under the construction contract. We think plaintiff's motion for partial summary judgment as to the retained bonds was properly granted but defendant city's cross motion to dismiss should have been granted insofar as it asks for the dismissal of the complaint other than the return of said bonds.

■ ■ Plaintiff Renel, in this case, as did Depot in the companion case, contends that the city is liable on the construction contract. For the reasons stated above, we hold that the city is not liable to plaintiff Renel in a direct action on Renel's contract with Brooklyn Coop, and plaintiff does not have a right to enforce its contract with Brooklyn Coop against the city as if the contract were with the city, nor is plaintiff a third-party beneficiary of the contract between Brooklyn Coop and the city.

■ The suggestion is made that a contrary result is required by the unappealed decision of Special Term in *Empire Elec. Contrs. Assn. v Farber* (71 Misc 2d 167). Apparently in an earlier version the contractual scheme called for only one construction contract between Brooklyn Coop and a construction company, with respect to this same proposed wholesale co-operative meat market. Special Term held that this project was a public project governed by the requirements of section 101 of the General Municipal Law, requiring separate construction contracts for plumbing and gas fitting, heating and ventilation, and electric wiring and illuminating. The city complied with this decision and separate construction contracts for each type of work were entered into between Brooklyn Coop and several prime contractors, of which the plaintiff was one. Even assuming that the *Empire Elec. Contrs.* decision would otherwise be binding on the city on principles of collateral estoppel with respect to issues necessarily determined in that case, we do not think that that decision deter-

mined (either expressly or by necessary implication) that the parties could not agree that only the "agent" should be liable on the contract with the construction company.

■ A separate problem is presented, however, with respect to the $220,000 face amount of bonds deposited by plaintiff Renel and held by the city in lieu of retainages under the plaintiff's construction contract with Brooklyn Coop with respect to work done by plaintiff. These bonds had apparently been delivered for release of retainages, either pursuant to or on analogy to section 106 of the General Municipal Law. Brooklyn Coop had delivered the bonds to the city when the city released the retainages. Here, the very possession by the city of plaintiff's bonds creates a sufficient relationship between the parties so that plaintiff Renel has a right to sue the city to obtain its bonds. There appears to be no dispute that plaintiff has completed substantially all (99.7%) of its contract work. The technical requirements under plaintiff's contract with Brooklyn Coop for the return of the retainages include a "punch list," etc. Because of various developments beyond plaintiff's control, it seems unlikely that this "punch list" can be prepared. In any event, it is not up to plaintiff to prepare it. Brooklyn Coop for whose benefit and under whose contract the retainages are being held has no objection to the return of the bonds. The city should not be permitted to hold plaintiff's bonds indefinitely.

In the circumstances, Special Term properly granted plaintiff's motion for partial summary judgment directing the release of the bonds to plaintiff.

In *Depot Constr. Corp. v City of New York* the order, Supreme Court, Bronx County (DiFEDE, J.), entered March 16, 1977, denying defendants', City of New York and its agency, Economic Development Administration, motion to dismiss certain causes of action in the complaint pursuant to CPLR 3211 (subd [a], par 7), should be reversed, on the law, so far as appealed from and said defendants' motion to dismiss should be granted to the extent of dismissing the first, second, third and ninth causes of action in the amended complaint and directing the severance thereof and final judgment thereon, and dismissing the fourth, fifth and sixth causes of action in the amended complaint without prejudice to an appropriate application to Special Term to plead again with respect to said causes of action, all with costs to appellant.

In *Renel Constr. v Brooklyn Coop Meat Distr. Center* the order, Supreme Court, New York County (KIRSCHENBAUM, J.),

entered December 17, 1976, granting partial summary judgment to plaintiff directing the return of certain New York City bonds in the face amount of $220,000, and denying defendant City of New York's cross motion for an order dismissing the complaint pursuant to CPLR 3211 (subd [a], par 7), should be modified, on the law, to the extent that defendant city's motion to dismiss the complaint is granted and the complaint is dismissed insofar as it relates to relief other than the return of said bonds and the order is affirmed insofar as it directs the city to return said bonds in the face amount of $220,000 to the plaintiff, all without costs.

KUPFERMAN, J. P. (dissenting in part). While I concur in the analysis, I believe that the city is collaterally estopped to deny its obligation by virtue of its failure to appeal from the determination in *Empire Elec. Contrs. v Fabber* (71 Misc 2d 167). (Cf. *Patrolmen's Benevolent Assn. v City of New York,* 41 NY2d 205, affg 52 AD2d 43.)

BIRNS and LANE, JJ., concur with SILVERMAN, J., in first above-entitled action; KUPFERMAN, J. P., dissents in part in an opinion.

KUPFERMAN, J. P., BIRNS and LANE, JJ., concur in second above-entitled action.

Order in first above-entitled action, Supreme Court, New York County, entered on December 17, 1976, modified, on the law, to the extent that defendant city's motion to dismiss the complaint is granted and the complaint is dismissed insofar as it relates to relief other than the return of the New York City bonds in the face amount of $220,000, and the order is affirmed insofar as it directs the city to return said bonds to the plaintiff-respondent, without costs and without disbursements.

Order in second above-entitled action, Supreme Court, Bronx County, entered on March 16, 1976, unanimously reversed, on the law, so far as appealed from, and the motion granted to the extent of dismissing the first, second, third and ninth causes of action in the amended complaint and directing the severance thereof and final judgment thereon, and dismissing the fourth, fifth and sixth causes of action in the amended complaint without prejudice to an appropriate application to Special Term to plead again with respect to said causes. Appellant shall recover of respondent $60 costs and disbursements of this appeal.