420 So.2d 410 (1982)
JOSEPH BUCHECK CONSTRUCTION CORPORATION, a Florida Corporation, Appellant,
v.
W.E. MUSIC, Saco Development, Inc., a Texas Corporation, and the First National Bank of Live Oak, a National Banking Corporation, Appellees.
No. AD-486.
District Court of Appeal of Florida, First District.
October 14, 1982.
*411 Thomas W. Brown and Eddie M. Anderson of Brannon, Brown, Norris, Vocelle, Haley, Brown & Robinson, P.A., Lake City, for appellant.
Ernest A. Sellers and Andrew Decker, III, of Airth, Sellers & Lewis, Live Oak, for First Nat. Bank of Live Oak and W.E. Music, appellees.
Winston W. Jacobo, Live Oak, for Saco Development, Inc., appellee.
ERVIN, Judge.
We determine this appeal to have been timely and properly noticed and affirm in part the lower court's judgment, based upon a jury special verdict, that the appellant was not a third-party beneficiary of a certain conveyancing agreement, relating to a "cost-plus" contract, between Bucheck and Suwannee County Mall Ltd. We reverse the judgment and remand the case for new trial, however, as it pertains to the issue of whether the parties to a joint venture agreement intended for appellant to be a third-party beneficiary of that agreement. Although a number of issues were presented on appeal, only two of them warrant discussion.
This case involves two actions which were consolidated for trial. These actions stem from an agreement between the appellant, Joseph Bucheck Construction Corp. (Bucheck) and the Suwannee County Mall, Ltd., consummated on December 29, 1975, for the purpose of completing construction of the mall. Bucheck agreed to complete construction for $51,900. By February, 1976, it became apparent to Bucheck that additional *412 funds would be necessary to complete the work. Bucheck contacted Leslie Rogers, one of the principals of the Suwannee County Mall partnership, and a new cost-plus contract was consummated on February 26, 1976 to replace the former 1975 agreement. There is conflicting evidence as to whether the bank or the other principals of the mall partnership were ever made aware of this new agreement.[1] Because of an ever deepening economic crisis, Bucheck in April 1976 filed liens in the county's official records for $119,161.81.
On May 20, 1976 the Suwannee County Mall, Ltd., conveyed title of the mall to Saco Development. Saco included all of the Suwannee County Mall, Ltd. principals with the exception of Rogers. Part of the conveyance agreement provided that Saco would assume "the" construction agreement. It was unclear whether this clause referred to the original 1975 agreement or the newer cost-plus contract. Bucheck maintained the conveying agreement pertained to the cost-plus agreement, but the principals of Saco countered that Rogers had never informed them of the cost-plus agreement that he had executed. Consequently, being unaware of the later agreement, the Saco principals assert that they intended to refer to the original 1975 contract for $51,900.

I.
In the first action, Bucheck filed suit against Saco, claiming that it was a third-party beneficiary of the conveyancing agreement clause, which stated that Saco would assume all liability for "the" construction contract. The question was whether the original 1975 or the cost-plus contract was intended as "the" construction contract. Aside from the conflicting testimony as to whether the Suwannee County Mall principals, who later became principals of Saco, were aware of the cost-plus contract, Bucheck presented evidence of its lien for $119,161.81, arguing that the lien was filed based on the existence of the cost-plus contract; that the lien was filed prior to the time Saco took title to the mall; that, as a result, the Saco principals were on notice as to the cost-plus contract or, at the minimum, on inquiry notice. By special verdict, the jury determined that Saco did not intend to assume the cost-plus contract. Appellant contends that the lower court should have instructed the jury that, as a matter of law, the Saco principals were aware of the cost-plus agreement.
We find no error. Appellant's argument confuses two principles  knowledge and intent. "Knowledge" means acquaintance with a fact, the act or state of understanding. On the other hand, "intent" means purposing. People v. Henry, 23 Cal. App.2d 155, 72 P.2d 915, 921 (1937). If one knows of something, that doesn't mean that he or she intends something.
To be sure, knowledge of a factual circumstance may influence the intent behind a subsequent act. This view is implicit in the general rule of contract construction that circumstances surrounding the parties' execution of a contract should always be considered in ascertaining intent. 11 Fla. Jur.2d Contracts § 110 nn. 14-15 (1979). However, whether a party intends something merely because he or she has knowledge of a fact is no more than a question of intent. In this instance the jury determined that issue against the appellant.
Bucheck's contention that the Saco principals were at least on inquiry notice of the cost-plus contract by virtue of the lien fails for another reason. Section 713.08(5), Florida Statutes (1981), states that recordation of a claim of lien constitutes constructive notice of the contents and effect of the lien. See also, 22 Fla.Jur. Mechanics Liens § 31 (Supp. 1982). Constructive notice is a legal inference that is imputed to one not having actual notice. Sapp v. Warner, 105 Fla. 245, 141 So. 124, 127 (1932); 23 Fla.Jur. Notice & Notices § 4 (1959). It is a fiction that is imputed by the law primarily for the *413 promotion of sound policy. 66 C.J.S. Notice § 6 (1950); Schoedel v. State Bank of Newburg, 245 Wis. 74, 13 N.W.2d 534, 535 (1944). It is not actual knowledge of a fact. 66 C.J.S. Notice § 6 n. 90(2) (1950). Constructive notice would merely impute knowledge of the lien. It would not impute knowledge of the facts giving rise to the lien or even put one on inquiry notice.
The position advocated by the appellant  that the Saco principals knew of the cost-plus contract by virtue of the recorded lien  is one of implied actual notice. Actual notice may of course be either express or implied. Sapp, 141 So. at 127; Hagan v. Sabal Palms, Inc., 186 So.2d 302, 313 (Fla. 2d DCA 1966), cert. denied, 192 So.2d 489 (Fla. 1966). It is conceivable that the recorded lien might have presented implied actual notice, because the same fact may sometimes constitute constructive notice and implied actual notice. First Federal Savings & Loan Association of Miami v. Fisher, 60 So.2d 496, 499 (Fla. 1952). However, the distinction between constructive and implied actual notice is crucial and rests on the factual inferences accompanying implied actual notice. Bucheck's argument that the Saco principals had the ability to gain the truth or facts behind the lien and had a duty to do so forms the underpinnings of the concept of implied actual notice. While the Florida Supreme Court in Sapp, a 1932 opinion, stated that a trial court could draw this factual inference as a matter of law when equitable to do so, the more modern view is to leave the task of drawing factual inferences to the trier of fact, assuming that there are sufficient facts to require a further inquiry. McDonald v. McGowan, 402 So.2d 1197, 1200 (Fla. 5th DCA 1981), rev. dismissed sub nom., Allmon v. McDonald, 411 So.2d 380 (Fla. 1981); see also 66 C.J.S. Notice § 6 n. 8 (1950). The jury rejected any implied actual notice by its verdict, and we affirm.

II.
The second action stems from occurrences after Saco Development took title to the mall on May 20, 1976. To bolster its financial position, Saco consummated a joint venture agreement with the bank's nominee, W.E. Music, on June 17, 1978. The agreement provided that the parties would share in "all valid liens or debts due" at the mall.
Bucheck brought an action against Saco, the bank and its alleged nominee, W.E. Music, contending that it was a third-party beneficiary of the joint venture agreement by virtue of the clause that Saco and Music would share in "all valid liens or debts due." Appellees generally denied this. Approximately a week before trial the appellees sought leave to amend their answer to Bucheck's complaint by asserting that the venture agreement had been rescinded and that Bucheck had never manifested an acceptance of the joint venture agreement prior to its rescission. Although the court denied the request for leave to amend, we are unable to discern the reason, because there is apparently no record transcript of this hearing.
At a pre-trial conference the day of trial, Bucheck's counsel requested the court to prevent the appellees from introducing any evidence of the termination of the agreement, except in support of the general denial of the existence of the contract as having been created to benefit Bucheck, as a third-party beneficiary. The court did not respond at this point. During the trial, counsel for the bank questioned Joseph Bucheck of Bucheck Construction, whether or not he was aware that the joint venture had been terminated when he first learned of its existence. Bucheck stated that he did not know if it had been terminated. No objection was made to this question. Later, a deposition of one of the Saco principals was read to the jury in which the witness stated that as far as he was concerned the joint-venture agreement had been terminated. After the deposition had been read to the jury, appellant's counsel noted to the court that he was under the impression that he had a continuing objection as to all questions concerning affirmative defenses to the contract. The court in somewhat cryptic language appeared to approve trying the issue based on the defense of termination of *414 the joint venture agreement, to which Bucheck's counsel responded by demanding that the best evidence of the termination of the joint venture should be required. This evidence, a termination/hold harmless agreement, was apparently never produced.[2]
In his closing argument, the bank's counsel argued to the jury that termination of the joint venture would deprive Bucheck of any rights in the agreement. Subsequently, the jury was charged that the parties may effectively rescind, vary or abrogate their contract as they desire at any time prior to a manifestation of acceptance, adoption or action in reliance by a third-party beneficiary. We are unable to determine in the record any objection to this instruction. Upon the agreement of the parties, a special verdict form was submitted to the jury posing the narrow question: "Was JOSEPH BUCHECK CONSTRUCTION CORPORATION an intended beneficiary under the Joint Venture Agreement dated June 17, 1976? YES ____ NO ____." The jury returned the verdict forms, marked in the negative.[3]
A host of legal problems springs from the foregoing factual synopsis and the arguments of the parties. One week before trial the lower court disallowed appellee's request to amend its answer by alleging that Bucheck could not argue a third-party beneficiary theory due to termination of the joint venture agreement. Termination in this case was in the nature of rescission of the joint venture agreement.[4] At least one federal court has held that rescission is an affirmative defense. Bagwell v. Susman, 165 F.2d 412, 415 (6th Cir.1947); cf. Mobil Oil Corp. v. V.S.H. Realty, Inc., 408 So.2d 585, 586 (Fla. 5th DCA 1981). While we have found no Florida cases expressly stating that rescission is an affirmative defense, it appears that rescission falls within the general definition of that which is included within the nature of an affirmative defense:
Otherwise stated, it is any matter which avoids the action, and which the plaintiff is not bound to prove in the first instance in support of it, but which under the rules of evidence the defendant must affirmatively establish. A defense that concedes that the plaintiff once had a good cause of action, but insists that it no longer exists, involves new matter. If what is alleged amounts to a denial, it is not new matter; nor is it new matter if the facts alleged might have been proved under a denial.
61A Am.Jur.2d Pleading § 153 (1981) (footnotes omitted). As an affirmative defense, *415 it is waived unless pleaded. Con-Dev of Vero Beach, Inc. v. Casano, 272 So.2d 203, 206 (Fla. 4th DCA 1973); Fla.R.Civ.P. 1.110(d); see generally, 25 Fla.Jur. Pleadings § 77 (1959).
An exception to this rule is that an affirmative defense, tried by express or implied consent of the parties, is to be treated as if it had been raised in the pleadings. Garrett v. Oak Hall Club, 118 So.2d 633, 635 (Fla. 1960); Massey-Ferguson, Inc. v. Santa Rosa Tractor Co., 366 So.2d 90, 93 (Fla. 1st DCA 1979), cert. denied, 376 So.2d 75 (Fla. 1979). Appellee argues that by virtue of the question posed to Joseph Bucheck without objection and the recital of comments by the deposition witness, this case falls within the exception to the rules in Garrett and Massey-Ferguson. We think not.
The appellant had succeeded only a week before trial in obtaining a denial of the appellees' attempts at pleading rescission as an affirmative defense. The appellant's counsel carefully placed the court and appellees' attorneys on notice immediately prior to trial that it would view any reference to the termination of the joint venture as prejudicial and objectionable. Appellant made an unequivocal objection on the record after the deposition reference to termination of the joint venture. There was no express or implied consent to present evidence of this issue to the jury.
Having held that it was error to have permitted the introduction into evidence of termination of the joint venture agreements, we must determine whether the error was of such magnitude as to require reversal. "The test to be applied by the appellate court in determining whether prejudicial error has been committed is whether, but for the error complained of, a different result would have been reached at the trial." Wallace v. Rashkow, 270 So.2d 743, 745 (Fla. 3d DCA 1972); accord, Sanlando Utility Corp. v. Morris, 418 So.2d 389 (Fla. 1st DCA 1982). Our review of the record convinces us that without these errors a different result might have occurred.
It is true that the jury was not asked specifically in the special verdict interrogatory to consider whether the joint venture had been rescinded. The interrogatory expressly asked only that the jury ascertain whether the appellant was an intended third-party beneficiary of the joint venture agreement. However, the presentation of evidence pertaining to the rescission of this agreement over objection was clearly poisonous when considered against the facts: (1) that the Bank's attorney argued to the jury in summation that rescission would deprive Bucheck of any rights under the joint venture agreement; (2) that appellant only a week before trial had been assured that the affirmative defense of rescission would not be tried, while at trial the affirmative defense became an issue that the appellant was apparently unprepared to counter; (3) that the rescission was referred to more than once in testimony, and (4) the best evidence of the rescission was apparently never introduced into evidence.
Therefore, it was prejudicial to have permitted the testimony concerning termination of the joint venture agreement into evidence. We reverse the final judgment on this point only and remand for retrial. In doing so, however, we consider it appropriate to observe that it appears from the record we have before us that the issue of rescission of the third party agreement was relevant  assuming that the admission into evidence of the rescission would not violate the best evidence rule  and that it would have furthered the cause of justice by trying this issue. It is unclear precisely why leave to amend was not granted, especially in view of the fact that Florida Rule of Civil Procedure 1.190(a), relating to the amendment of pleadings, provides: "Leave of court shall be given freely when justice so requires." See also Singh v. Tolz, 380 So.2d 1326, 1329 (Fla. 4th DCA 1980). Generally, a court will permit an amendment in favor of resolving a case on its merits. New River Yachting Center v. Bacchiocchi, 407 So.2d 607, 609 (Fla. 4th DCA 1981). Nonetheless, we are cognizant of the fact that leave to amend vests a certain degree of discretion in the trial bench. Affordable Homes, Inc. v. Devil's Run, Ltd., 408 So.2d 679, *416 680 (Fla. 1st DCA 1982); see also Thomas v. Sports Car Club of America, Inc., 386 So.2d 272, 274 (Fla. 4th DCA 1980) (no abuse of discretion in denying leave to amend to allege matters in avoidance of a release due to lengthy pre-trial opportunity to amend).
Therefore, the final judgment is reversed and remanded for a new trial with regard to the action on the joint venture agreement. The lower court is directed to consider permitting amendment of the pleadings to include the affirmative defense of rescission to Bucheck's allegations.
AFFIRMED in part, REVERSED in part, and remanded for further consistent proceedings.
McCORD and SHAW, JJ., concur.
NOTES
[1] No issue of authority to find Rogers' co-principals on imputed notice was raised below or will be addressed by this opinion.
[2] If the joint venture agreement had been rescinded, it appears that such act would surely have been in writing. Further, the extent and time of rescission would be relevant in indicating that the contents of the writing would be in question. "Where the terms or contents of a written instrument are directly involved in the issues, the instrument itself is undoubtedly the best evidence of its contents, and secondary evidence thereof cannot be admitted until the nonproduction of the original instrument has been satisfactorily accounted for." 23 Fla. Jur.2d Evidence & Witnesses § 199 (1980); § 90.952, Florida Statutes (Supp. 1978); cf. Nottingham v. Schulhof, 61 So.2d 912 (Fla. 1952).
[3] Because the appellant was not an express third-party beneficiary, a determination was required as to whether or not it was an intended third-party beneficiary. Assuming that the appellant was not intended as a beneficiary at the time the joint venture was consummated, the bank would have no liability, because incidental third-party beneficiaries have no right to sue on a particular contract. Hurley v. Lano International, Inc., 569 S.W.2d 602 (Tex.Civ. App. 1978); Renel Construction, Inc. v. Brooklyn Cooperative Meat Distribution Center, Inc., 59 A.D.2d 391, 399 N.Y.S.2d 429 (App.Div. 1977), aff'd sub nom., Depot Construction Corp. v. City of New York, 46 N.Y.2d 859, 414 N.Y.S.2d 511, 387 N.E.2d 222 (1979); 17 Am.Jur.2d Contracts § 307 (1964).
[4] Assuming that Bucheck was an intended beneficiary of the joint venture agreement, Saco and Music would have been free to rescind, vary, or abrogate the agreement as they saw fit, without the assent of third party beneficiary, Bucheck, unless Bucheck had accepted, adopted or acted upon it. Mitchell v. Marklund, 238 Cal. App.2d 398, 47 Cal. Rptr. 756 (1965); 17 Am.Jur.2d Contracts § 317 (1964). Consequently, the issue of acceptance or action in reliance by Bucheck before an apparent rescission of the joint venture by Saco and Music is relevant to disposition of this case.