518 So.2d 336 (1987)
Wallace S. WOODARD, Appellant,
v.
FLORIDA STATE UNIVERSITY, Appellee.
No. BS-451.
District Court of Appeal of Florida, First District.
December 15, 1987.
Rehearing Denied January 27, 1988.
Pamela L. Cooper of Meyer, Brooks and Cooper, P.A., Tallahassee, for appellant.
Gerald B. Jaski, Gen. Counsel, and Sonja P. Mathews, Associate Gen. Counsel, Florida State University, Tallahassee, for appellee.
THOMPSON, Judge.
Woodard appeals an order denying his request for an administrative hearing to contest his termination as a tenured professor at Florida State University. We affirm.
Woodard was charged by some of his students and former students with improper actions in his contact with them. In settlement and disposition of these charges and the pending disciplinary action against him, Woodard entered into a written agreement with the University dated November 14, 1985 in which Woodard agreed that he would be placed on compulsory disability leave status for the Spring semester of 1986 in accordance with the terms of Article 17.11, of the United Faculty of Florida/Board of Regents Collective Bargaining Agreement (CBA). He agreed to voluntarily participate in psychological counseling with psychiatric oversight by practitioners acceptable to the University and that he would not be eligible for employment at the University during the Summer term of 1986. He further agreed that he would successfully complete the program *337 of treatment deemed necessary by his practitioners so that in the opinion of his psychologist/psychiatrist he would be able to return to teaching, research and service duties typically assigned and performed by him prior to January 1985. An addendum to the November 14 agreement placed certain other limitations on Woodard's activities at Florida State University and his contact with students at the University. Both the agreement and the addendum were signed by Woodard and his attorney Pamela L. Cooper.
Article 17.11, the compulsory disability leave provision of the CBA, provides in part:
If the employee fails to fulfill the terms and conditions of the compulsory disability leave and/or is unable to return to work and perform assigned duties at the end of a compulsory leave period, the President or representative may, based upon the university's needs:
(a) extend the leave without pay;
(b) offer the employee part-time employment;
(c) request the employee's resignation; or
(d) release the employee from employment, notwithstanding the provisions of Article 15.1 and 15.10. (Emphasis supplied.)
The provisions of Articles 15.1 and 15.10 set out the procedure to be followed when disciplining and terminating an employee for just cause. However, Article 17.11(d) above makes it clear that a release from employment because of failure to fulfill the terms and conditions of compulsory disability leave is not a disciplinary matter.
The only issue for decision on this appeal is whether Woodard's request for hearing was timely. The determination of this question is dependent upon whether the notice of termination pursuant to the compulsory disability leave agreement which was sent to Woodard in care of his attorney was sufficient notice to Woodard requiring that a request for hearing be filed within 21 days. We find that the notice was sufficient. Both the compulsory disability leave agreement and the addendum to that agreement were signed by Woodard and by Pamela Cooper, his attorney. All subsequent contact between the University and Woodard was between Cooper and a university representative. After Woodard failed to comply with the compulsory disability leave agreement the University notified him, in care of his attorney, of his failure to comply and of its election to terminate his employment as a tenured professor pursuant to Article 17.11(d) of the CBA. The notice to Woodard in care of his attorney was received by Cooper and was duly forwarded to Woodard. In his letter to the University acknowledging receipt of the notice Woodard admits that Pamela Cooper was his attorney. Fla. Admin. Code Rule 28-5.111 provides that persons requesting a hearing on an agency decision which does or may determine their substantial interest shall file a petition with the agency within twenty-one (21) days from receipt of written notice of the decision. The word "person," however, should not be taken literally so as to require receipt of notice by the party. Fla. Admin. Code Rule 28-5.109 specifically provides that unless otherwise ordered by the presiding officer, service of every pleading and every other paper filed in a proceeding shall be made upon the party or his representative. Similarly, Fla.R.Civ.P. 1.080(b), relating service of pleadings and papers, even requires that when service is to be made upon a party represented by an attorney, service shall be made upon the attorney unless service upon the party is ordered by the court. Notice to his attorney and agent is notice to Woodard, and receipt by his attorney is receipt by Woodard. The time for filing a request for hearing had expired before any such request was made by Woodard or his attorney.
Accordingly, we affirm the order denying his request for an administrative hearing. AFFIRMED.
ZEHMER, J., concurs.
SHIVERS, J., dissents with written opinion.
SHIVERS, Judge, dissenting.
I respectfully dissent. Dr. Woodard was entitled to personal receipt of notice. He *338 received such notice on January 12, 1987, after it was sent to him by the lawyer who had represented him in working out a compulsory disability leave agreement with the University. Dr. Woodard requested an administrative hearing within 21 days after his receipt of notice, which, in my opinion, was timely. I believe he is entitled to a formal hearing. The University's service of notice to his attorney who had represented him in negotiating the agreement was inadequate. Before discussing the legal basis for this conclusion, I would like to expand somewhat on the facts which engendered this appeal.
This case involves the University's firing of Dr. Woodard for his failure to participate in psychological and psychiatric counseling. Dr. Woodard had agreed to counseling when the University placed him on compulsory leave for reasons unrelated to this appeal. After the University fired Woodard, he requested a formal hearing under section 120.57(1) of the Florida Administrative Procedure Act (APA). The University refused Woodard's request on the grounds that he had waived his right to a hearing through his failure to seek one within 21 days. Hence, there has never been a formal agency hearing in this case. The story of how Dr. Woodard was denied access to the administrative process is revealed to us through a series of letters exchanged between the University, Dr. Woodard, and his attorney, Pamela Cooper.
By letter dated December 8, 1986, the University fired Woodard, a tenured faculty member at Florida State University. The University sent this letter in care of Cooper, who had represented Dr. Woodard in negotiations culminating in his signing a compulsory disability leave agreement (UFF/BOR Agreement). Dr. Woodard was teaching in Pennsylvania at the time the University sent the letter to Cooper because on of the provisions of the UFF/BOR Agreement directed him to go on leave through the fall of 1986.
The December 8 letter is addressed to Cooper, and it sets forth charges supporting the University's decision. It also advises Dr. Woodard, and not Cooper, of his right to contest the University's action through either a collective bargaining agreement grievance procedure or the Florida APA. As to the APA, the letter states "you [Dr. Woodard] may be entitled to request a hearing pursuant to the Florida Administrative Procedure Act, Chapter 120, Florida Statutes, by filing an appropriate petition with me within 21 days of receipt of this letter." (emphasis added) Upon receipt by Cooper's law firm, the letter was then forwarded to Dr. Woodard in Pennsylvania. Dr. Woodard did not receive the December 8 letter until January 12, 1987. On January 24, 1987, Dr. Woodard invoked his right to an administrative hearing in a letter to Dr. Gus Turnbull.
On February 20, 1987, the University denied Dr. Woodard's request for review under both the UFF/BOR Agreement and the Florida APA. The University's stated reason for denial was Dr. Woodard's failure to timely file a request for an administrative hearing. The University asserted in this letter that notice to Cooper, Dr. Woodard's attorney, rather than Dr. Woodard personally, constituted imputed notice to him which was legally sufficient to commence the running of the jurisdictional time limits. (The University is silent in this letter on why, in light of the language of the December 8 letter which is directed specifically at Dr. Woodard, it had not explained to him that the only notice he was to receive was to be effected through his counsel, or that it had deviated from the model rules of administrative procedure in sending notice to Cooper.) The February 20 letter concludes that Woodard waived his right to any administrative hearing because he had not timely requested review of his release from the University.
In a letter dated March 19, 1987, Dr. Woodard's attorney sought reconsideration and clarification of the University's denial of his request for a hearing. Although the University never identified its letter of February 20, 1987, as a final order, Cooper concluded that the February 20 letter constituted final agency action. The University never responded to Cooper's request for reconsideration.
*339 The magnitude of the interests at stake in this case  a tenured professor's loss of his teaching position  as well as the applicable case law and rules of administrative procedure, mandate that Dr. Woodard have actually received notice of his entitlement to an administrative hearing. The contours of due process vary according to the rights and needs of the individual and the government. Cafeteria Restaurant Workers' Union Local 473, AFL-CIO v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). "Due process itself is not a technical conception with a fixed content unrelated to time, place, and circumstances; it is a general requirement that legal processes follow the forms of law, be appropriate to the case, and be just to the parties affected." Robison v. Wichita Falls and North Texas Community Action Corp., 507 F.2d 245, 252 (5th Cir.1975) (citations omitted). This court has stated that "[t]he extent of procedural due process protections varies with the character of the interest and nature of the proceeding involved." In Interest of D.B., 385 So.2d 83, 89 (Fla. 1980).
Dr. Woodard's interest in receiving an administrative hearing is not an abstraction. A tenured professor acquires a valuable property right in his expectation of continued employment. Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Texton v. Hancock, 359 So.2d 895 (Fla. 1st DCA 1978). Before constitutionally recognized rights of life, liberty, and property are infringed upon, individuals having such rights must be given reasonable notice of proposed action and an opportunity to appear and be heard on the issue. Friends of the Everglades, Inc. v. Board of County Commissioners of Monroe County, 456 So.2d 904 (Fla. 1st DCA 1984). A requirement of actual receipt of notice is reasonable in the instant case given the unambiguous language of Florida Administrative Code Rule 28-5.111(1), which governs decisions determining substantial interests:
Unless otherwise provided by law or agency rule:
(1) Persons requesting a hearing on an Agency decision which does or may determine their substantial interest shall file a petition with the Agency within twenty-one (21) days of receipt of written notice of the decision... .
(emphasis added) Rule 28-5.111(1) is controlling in this case because the University had not yet adopted a specific rule of procedure concerning the method of requesting a hearing for parties adversely affected by its actions. See National Advanced Systems Corp. v. School Board of Orange County, 397 So.2d 1185 (Fla. 5th DCA 1981). Similarly, section 20.8 of the UFF/BOR Agreement, which outlines contractual grievance procedures, provides:
All grievances shall be filed ... within twenty-five (25) days following the act or omission giving rise thereto, or the date which the employee knew or reasonably should have known of such act or omission ...
(emphasis added) Neither of the foregoing provisions purports to authorize substituted service upon an attorney as sufficient notice of agency action. Both provisions expressly state that written notice must be given to the affected person in order to commence administrative proceedings. If the drafters of these provisions intended for constructive or substituted service to suffice in instances where an agency must provide a clear point of entry into administrative proceedings, then they surely would have included such language. To the contrary, however, these provisions require receipt by the affected party of the written notice before the administrative process is triggered.
This court has repeatedly acknowledged that "[n]otice of agency action which does not inform the affected party of his right to request a hearing, and the time limits for doing so, is inadequate to `trigger' the commencement of the administrative process." Henry v. Department of Administration, 431 So.2d 677, 680 (Fla. 1st DCA 1983) (citing Walquist v. School Board of Liberty County, 423 So.2d 471 (Fla. 1st DCA 1982); Sterman v. Florida State University Board of Regents, 414 So.2d 1102 (Fla. 1st DCA 1982)); see also City of St. Cloud v. Department of Environmental *340 Regulation, 490 So.2d 1356 (Fla. 1st DCA 1986). When an agency seeks to establish waiver based on the passage of time following action which the agency claims as final, it must show that the party affected by such action has received notice sufficient to commence the running of the time period within which review must be sought. Henry, 431 So.2d at 680. The requirements for such notice apply regardless of actual or presumed notice of agency action. Id. Thus, "the sufficiency of the notice is not affected by the actual knowledge of the recipient." Id.
Apart from the importance of Dr. Woodard's interests in requesting an administrative hearing, and Rule 28-5.111's literal requirement of receipt of notice, two of this court's decisions demonstrate that Woodard was entitled to actual, rather than imputed, notice. The first of these is Symons v. Dept. of Banking and Finance, 490 So.2d 1322 (Fla. 1st DCA 1986). In Symons, an agency sent by certified mail a copy of its order denying Michael Symons, an applicant for securities industry registration, to the personal address which appeared on Symons' job application. The postal service later returned the letter to the Department unclaimed, and the Department sent a second copy of both documents by certified mail to Symons' employer. An employee at Symons' place of business signed the letter, but it was not until after the 21-day time limit provided in Rule 28-5.111(1) that Symons filed his petition for a formal administrative hearing.
The Department argued on appeal that its certified mailing of the unclaimed letter constituted constructive notice which satisfied the conditions of Rule 28-5.111(1), whether or not the letter was actually delivered to Symons. Judge Mills, writing for the court, stated that "[r]ule 28-5.111 ... provides that persons requesting a hearing on an agency decision which determines their substantial interests shall file their petition within twenty-one days of receipt of written notice of the decision." Id. at 1323. (emphasis in original) As to constructive notice, the court found such "notice is a legal fiction that is imputed by the law primarily for the promotion of sound public policy. Joseph Bucheck Construction Corp. v. W.E. Music, 420 So.2d 410, 412-13 (Fla. 1st DCA 1982). Employing such a fiction to deny access to administrative proceedings, especially when, as here, the agency knew the order had not been delivered and, in fact, found it proper to effect a second delivery, would not promote sound public policy and was erroneously employed below." Symons, 490 So.2d at 1324. Surely the application of imputed notice would not further public policy in the instant case where the University could have easily learned of Dr. Woodard's whereabouts simply by inquiring about them with his attorney.
The majority lays great emphasis on the signing, by Dr. Woodard's attorney, of Woodard's compulsory leave contract and the addendum to that agreement. That Dr. Woodard retained an attorney for the preparation of a contract with the University does not necessarily mean he would automatically select that same attorney to further his interests in an adversarial administrative hearing. Indeed, the majority's dependence on the previous representation by Dr. Woodard's counsel as a basis for imputed notice reflects a basic misunderstanding of the administrative process because it overlooks what, in administrative parlance, marks a change in the character of the process from free-form proceedings, which are outside the APA, to final agency action, which is a prelude to formal or informal proceedings under section 120.57. It is, of course, this very finality which gives rise to the need for notice in the first place. See Capeletti Brothers, Inc. v. Dept. of Transportation, 362 So.2d 346 (Fla. 1st DCA 1978). In any event, Dr. Woodard's acknowledgment that Cooper had represented him does not dispense with the requirement that he should have been given personal receipt of notice. And the uncertainty of Cooper's status as Woodard's attorney argues against finding waiver in this case since waiver is not a concept favored in the law. Henry, 431 So.2d at 680. Where confusion exists as to whether a party has waived his right to an administrative hearing, any doubt should be resolved *341 in favor of the affected party. Id. Cf. Gonzalez v. Dept. of Health and Rehabilitative Services, 418 So.2d 1128 (Fla. 1st DCA 1982) (licensee entitled to requisite notice and hearing prior to revocation of licenses despite consent stipulation providing for waiver of hearing).
Sims v. Board of Trustees of North Florida Junior College, 444 So.2d 1115 (Fla. 1st DCA 1984), another case concerning Rule 28-5.111(1), also supports Dr. Woodard's position. In Sims, a college president appealed from an order which the Board of Trustees of North Florida Junior College had entered denying him, on grounds of untimeliness, a section 120.57(1) formal hearing. The Board had held a meeting on February 8, 1983, at which it decided that the president's contract would not be extended. Sims, the college president, was present at this meeting. On March 24, 1983, Sims, filed a petition requesting a formal administrative hearing. The Board denied Sims's request as untimely, stating that the action it had taken at the February 8, 1983, meeting where it had first decided not to renew Sims's contract was final agency action for purposes of commencement of the 21-day period within which he was required to file for an administrative hearing.
On appeal, this court rejected the Board's contention that Sims's petition for a formal hearing was untimely. One of these contentions was that, because Sims was present at the February 8 meeting, he had actual notice of the forthcoming agency action as well as of his right to request a hearing. This court disagreed, stating that because the Board's notice had failed to inform Sims of his right to request a hearing and the time limits for making such a request, it was inadequate to trigger the commencement of the administrative process. 444 So.2d at 1117. There is no material distinction to be drawn from the facts of Sims and those of the case at bar for here, as in Sims, the party entitled to notice never learned of his right to request an administrative hearing.
Henry, Sims and Symons illustrate this court's continued insistence that individuals on the threshold of entrance into the administrative process actually receive notice of their entitlement to an administrative hearing. This point is underscored by a common theme throughout these decisions, which is that actual notice of agency action is often insufficient to commence the running of jurisdictional time limits. If this is so, then a fortiori, a legal fiction  such as imputed notice  which fails to inform the affected party of his option of seeking an administrative hearing is similarly insufficient.
While I readily acknowledge that Florida Administrative Code Rule 28-5.109 provides for service to both parties and their representatives, I cannot agree with the majority's conclusion that this negates the requirement of personal receipt in situations where persons have not yet entered the administrative process, and consequently, the provisions of Chapter 120. Rule 28-5.109, by its very terms, applies to service occurring after, rather than before, an individual has entered the administrative arena because it expressly states, "[u]nless the presiding officer otherwise orders, every pleading and every other paper filed in a proceeding shall be served on each party. Service shall be made upon the party or his representative by delivering a copy or by mailing it to the last known address." The words "presiding officer" indicate that the administrative proces has already begun, a fact borne out by Chapter 120's provision for appointment of hearing officers to conduct hearings "required by this chapter. ..." Section 120.65(2), Florida Statutes, (1985) (emphasis added).
For similar reasons, the majority's attempt to analogize Florida Rule of Civil Procedure 1.080(b), which mandates that service be made upon an attorney, to Rule 28-5.109, is also unpersuasive. In the judicial milieu, it is well established that service of an initial pleading even upon an attorney of record cannot constitute valid service upon a party. Drake v. Scharlau, 353 So.2d 961 (Fla. 2d DCA 1978). While Rule 1.080, Florida Rules of Civil Procedure, permits service to an attorney after the initial pleading, the pleading commencing the civil action must be served upon the *342 affected party. See Rule 1.070(f), Fla. R. Civ. P. The letter of December 8, 1986, was the first and only notice of the charges in support of the University's intent to take stringent disciplinary action. Unquestionably, the notice was intended to commence the administrative proceedings as the initial document providing a clear point of entry. Thus, by analogy, this document is akin to an initial pleading commencing the civil action. To construe the notice otherwise would defeat the purpose of requiring a "clear point of entry" and circumvent the intent of the model administrative rules. For the foregoing reasons, I respectfully dissent.