402 So.2d 1197 (1981)
Richard J. McDONALD and Theresa C. McDonald, His Wife, Appellants/Cross-Appellees,
v.
Robert C. McGOWAN, Albert E. Allmon and Sharon M. Allmon, His Wife, Appellees/Cross-Appellants.
No. 80-43.
District Court of Appeal of Florida, Fifth District.
July 8, 1981.
Rehearing Denied September 2, 1981.
*1199 Joe Teague Caruso, of Wolfe, Kirschenbaum, Caruso, Mosley, Scott & Kabboord, Cocoa Beach, for appellants/cross-appellees.
Carl W. Pearson, of Carl W. Pearson, P.A., Titusville, for appellees/cross-appellants, Albert and Sharon Allmon.
No appearance for appellee/cross-appellant Robert C. McGowan.
SHARP, Judge.
After both parties presented their evidence the trial judge directed a verdict against the McDonalds on their suit against the Allmons for specific performance and tortious interference with a real estate contract. He also directed a verdict against the Allmons on their countersuit against the McDonalds for slander of title. The parties appeal and cross-appeal both rulings. We reverse the rulings directing verdicts against the McDonalds because the record establishes they presented prima facie grounds for relief, and the causes of action should have therefore been resolved by the trier of fact. We affirm the directed verdict on the Allmon's counterclaim because no prima facie basis for relief was presented.
When a judgment based on a directed verdict is appealed, this court must read the evidence in a light most favorable to the party against whom the verdict is directed, resolving every conflict and inference for that party. Balart v. Michel's Kartway, Inc., 364 So.2d 90 (Fla.3d DCA 1978). Only if we conclude that the trier of fact could not have reasonably differed as to the establishment of a material fact or inference and the moving party was entitled to a judgment as a matter of law, can we affirm the judgment. Allstate Ins. Co. v. Gordon, 364 So.2d 44 (Fla.3d DCA 1978), cert. denied, 375 So.2d 910 (Fla. 1979); Kilburn v. Davenport, 286 So.2d 241 (Fla.3d DCA 1973), cert. denied, 295 So.2d 301 (Fla. 1974).
The record established that on approximately February 18, 1977, McDonald entered into a real estate purchase contract with one McGowan, the then owner of some acreage located in Brevard County, to buy the land for $10,000. McDonald intended to build a residence on the property. At the time of the litigation McGowan had prudently left the jurisdiction. McGowan had given Guest Realty an exclusive listing on the property and Mr. Wickersham, a broker, and Mrs. Stoll, a salesperson, were handling the transaction for Guest.
Sometime in January of 1977, Allmon saw McGowan's property and observed Guest Realty's sign on the land, as well as another older realtor's sign. He checked with his own broker to see if the property was in multiple listing. At that time it was not. He then discovered McGowan's identity through the tax rolls, and contacted him directly concerning the land. Allmon also wanted the land to build his residence on it. McGowan told Allmon the property was not listed with a broker and he was free to sell it. By a letter dated February 11, 1977, Allmon asked McGowan if he could put a deposit on the lot saying, "This would make me feel better... ." McGowan replied by a letter dated February 21, 1977 that he preferred not to accept a deposit from Allmon on the property because of reasons "I have explained" (but not disclosed in the record). McGowan told Allmon he would sell the property to the first person who came up with $10,000 cash. Within a very few days Allmon had a title company do a title search, and McGowan and he closed their sale on March 4, 1977.
*1200 Allmon testified he had no knowledge of McDonald's contract. However, Mr. Wickersham and McDonald both testified Allmon admitted to them, shortly after the closing, that McGowan had told him McGowan was holding a deposit for another person on the land. The real estate witnesses all testified that when a person is holding a deposit from another on land, there may or may not be a contract. The Allmon-McGowan closing took place under very rushed circumstances. The next day when McDonald confronted Allmon on the property and learned for the first time of Allmon's purchase, Allmon was calm and appeared to McDonald as having expected him. Allmon had with him in his camper all of the closing documents and the deed to show McDonald. In an effort to protect his interest in the property pending a resolution of the dispute, McDonald had his contract with McGowan recorded.

I. COUNTERCLAIM: SLANDER OF TITLE
The tort of slander of title is defined as making a false or malicious oral or written statement which disparages a person's title to real property, causing him damage. Old Plantation Corp. v. Maule Industries, Inc., 68 So.2d 180 (Fla. 1953). There was no evidence nor reasonable inference from the evidence that the contract recorded by McDonald was false nor that his action in recording it was malicious. McDonald had an enforceable contract to purchase real estate and he only sought to protect his rights under the contract, such as they were, by recording it. Further, Allmon failed to establish he suffered any damage as a result of the contract being recorded. Entry of the directed verdict on the counterclaim was correct. Allstate Ins. Co. v. Gordon, 364 So.2d 44 (Fla.3d DCA 1978).

II. SPECIFIC PERFORMANCE
The law in this jurisdiction is well established that a person purchasing property with notice that the seller had contracted to convey it to another may be compelled to perform the contract in the same manner as the seller would have been required to do, had he not transferred the legal title. Hartford Fire Ins. Co. v. Brown, 119 Fla. 610, 160 So. 657 (1935); Dunson v. Stockton, Whatley, Davin & Co., 346 So.2d 603 (Fla. 1st DCA 1977); La Guardia v. Perez, 339 So.2d 308 (Fla.3d DCA 1976); See Fraser v. Cohen, 159 Fla. 253, 31 So.2d 463 (1947).
The key material issue in this case was whether or not Allmon had knowledge of sufficient facts to charge him with implied knowledge of McDonald's prior contract. Implied notice is:
[N]otice inferred from the fact that the person had means of knowledge, which it was his duty to use and which he did not use... . A person has no right to shut his eyes or ears to avoid information, and then say that he has no notice; that it will not suffice the law to remain willfully ignorant of a thing readily ascertainable by whatever party puts him on inquiry, when the means of knowledge is at hand.
Sapp v. Warner, 105 Fla. 245, 141 So. 124 at 127 (1932).
Generally the determination of whether there are sufficient facts known to require further inquiry is one of fact that should be determined by the trier of fact. Rolland v. Thompson, 305 So.2d 239 (Fla. 1st DCA 1975). The burden of proof of one's status as a bona fide purchaser (without notice) is generally on the person claiming its protection. Henderson Development Co., Inc. v. Gerrits, 340 So.2d 1205 (Fla.3d DCA 1976), cert. denied, 348 So.2d 948 (Fla. 1977). Only rarely is the record so clear that a judgment can be directed as a matter of law. See Florida Power & Light Co. v. Rader, 306 So.2d 565 (Fla. 4th DCA 1975); O'Neal v. Coral Gables, 294 So.2d 102 (Fla.3d DCA), cert. denied, 303 So.2d 640 (Fla. 1974). Where as in this case, there are conflicting inferences to be drawn from the circumstances, where there is a means of learning about a prior contract which is not pursued, and where there is a question of credibility of witnesses, the issue of implied *1201 notice should be determined by the trier of fact. Kilburn v. Davenport, 286 So.2d 241 (Fla.3d DCA 1973); See McCausland v. Davis, 204 So.2d 334 (Fla.2d DCA 1967), cert. denied, 212 So.2d 869 (Fla. 1968); Applefield v. Commercial Standard, Ins. Co., 176 So.2d 366 (Fla.2d DCA), cert. denied, 183 So.2d 209 (Fla. 1965).

III. INTERFERENCE WITH A CONTRACT RIGHT
The tort of interference with a contract right, similar to interference with a business relationship, is recognized in this jurisdiction. Young v. Pottinger, 340 So.2d 518 (Fla.2d DCA 1976); Smith v. Ocean State Bank, 335 So.2d 641 (Fla. 1st DCA 1976); J. Rolfe Davis, Inc. v. Symon, 232 So.2d 439 (Fla. 4th DCA 1970). The elements of this tort are:
(1) The existence of a contract;
(2) The defendant's knowledge of the contract;
(3) The defendant's intentional procurement of the contract's breach;
(4) Absence of any justification or privilege;
(5) Damages resulting from the breach.[1]
The appellee argues there was no showing of malice or fraud on Allmon's part as regards McDonald, and therefore an essential element of the tort was not established.[2] But it appears to us the better view is that actual ill-will or fraud is not an essential element of the tort where the record shows a purposeful interference with a prior contract right. Smith v. Ocean State Bank; Blum v. William Goldman Theatres, Inc., 69 F. Supp. 468 (E.D.Pa. 1946), modified, on other grounds 164 F.2d 192 (3d Cir.1947); 45 Am.Jur.2d Interference § 4 (1969).
All of the elements of this tort were established prima facie by McDonald in this case. The element of Allmon's knowledge of the prior contract, as discussed above, could have been established from the circumstances as a matter of implied notice.[3] This was an issue which should have been determined by the jury because the evidence permitted different reasonable inferences.[4]
For the reasons stated above, this cause is
AFFIRMED IN PART AND REVERSED IN PART.
NOTES
[1] Smith v. Ocean State Bank, 335 So.2d 641 (Fla. 1st DCA 1976); Restatement (Second) of Torts § 766 (1977).
[2] Serafind v. Palm Terrace Apartments, Inc., 343 So.2d 851 (Fla.2d DCA 1976).
[3] 45 Am.Jur.2d Interference § 11 (1969).
[4] John B. Reid & Associates, Inc. v. Jimenez, 181 So.2d 575 (Fla.3d DCA 1965).