**AMJEMS, INC., Plaintiff,**

v.

**F.R. ORR CONSTRUCTION COMPANY, INC., Defendant.**

**No. 84–1433–Civ-Nesbitt.**

United States District Court, S.D. Florida, S.D.

June 26, 1985.

Wildredo A. Rodriguez, Broad & Cassel, Bay Harbor Island, Fla., for plaintiff.

John McClure, Ann Rice, Denver, Colo., Robert C. Zundel, Jr., Bond, Schoeneck & King, Boca Raton, Fla., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

NESBITT, District Judge.

THIS CASE involves a claim for breach of an option to purchase agreement which was entered into by the Defendant, F.R. ORR CONSTRUCTION COMPANY, INC. (Orr) and the prime lessee, FAIRWOOD–WELLS, INC. (Fairwood) and allegedly assigned to the Plaintiff AMJEMS, INC. (Amjems). The cause was tried to the Court. Upon review of the testimony and exhibits introduced in evidence, and having considered the parties' memoranda of law, the Court does hereby enter its findings of fact and conclusions of law as follows:

## FINDINGS OF FACT

On March 11, 1977, Orr as landlord and Fairwood as tenant, entered into a written Lease Agreement (Prime Lease) for a ten-year term on a commercial warehouse site located in Hialeah, Florida (the property). Simultaneously, Orr and Fairwood entered into an Option Agreement (Option) whereby Orr granted Fairwood the "right and option to acquire the premises for a period beginning on the date hereof [March 11, 1977] and expiring at 12:00 midnight on February 28, 1984."

The relevant paragraphs of the Prime Lease provided:

(15) Lessee may not without prior written consent of the lessor assign this Lease Agreement or any interest hereunder or sublet the Premises or any part thereof, but Lessee shall have the right to mortgage the leasehold. Lessor's consent, however, shall not be unreasonably withheld. Consent to an assignment or sublease shall not destroy or waive this provision and all subsequent assignments and subleases shall likewise be made only upon prior written consent of the Lessor ...

\* \* \* \* \* \*

(23) This Lease Agreement and the Option Agreement attached hereto and forming a part hereof, contain the entire agreement of the parties, and no representations, inducements, promises or agreements, except in writing and signed by Lessor and Lessee on or after the date hereof shall be of any force or effect. The parties have, however, entered into a short form lease of even date herewith, consistent with this Lease Agreement, and it is agreed that said short form lease shall be recorded.

The Option Agreement, a separate document, but executed on the same day as the Prime Lease provides in pertinent part as follows:

WHEREAS, of even date herewith Lessor and Lessee have executed a Lease Agreement (hereinafter called "Lease Agreement") wherein Lessor has leased to Lessee certain lands and buildings (the "Premises") located in Dade County, Florida, for a term of ten (10) years from March 1, 1977, and

WHEREAS, in connection with said Lease Agreement, Lessor and Lessee have agreed that Lessee shall have an option to purchase the premises, and

WHEREAS, Lessor and Lessee desire to reduce to writing their agreement concerning the terms and conditions of the option to purchase the Premises.

NOW THEREFORE, in consideration of the execution of the Lease Agreement by each party and of the mutual covenants, promises and agreements of the parties hereinafter set forth, the parties agree as follows. (The conditions of the option agreement were thereafter recited).

Reference to the Prime Lease is also made in Paragraphs 3, 4, and 5 of the Option Agreement.

On April 30, 1981 Fairwood entered into a Sublease Agreement with Atlas Paper Corporation (Atlas Paper). Pursuant to this Agreement and with the consent of Orr, Fairwood subleased the premises and assigned the Option to Atlas Paper, who was in possession of the property from April 30, 1981 to June 9, 1982 at which time the sublease and assignment was terminated.

On June 9, 1982 Amjems pursuant to an agreement for the sale of Atlas Paper, purchased substantially all of the assets of Atlas Paper. Amjems was given the exclusive right to use any variation of the name "ATLAS PAPER" with the exception of the name "ATLAS PAPER CORPORATION"; Amjems chose to conduct business as "ATLAS PAPER MILLS". Also on June 9, 1982 Amjems and Fairwood entered into a sublease agreement and a "letter agreement" which assigned to Amjems all right, title, and interest in the Option Agreement at any time after January 1, 1984. The letter agreement states as follows:

Fairwood, for itself and on behalf of any assignee of Fairwood which succeeds to Fairwood's position as landlord under the Lease, agrees that if Fairwood does not exercise the option to purchase the Leased Premises from Orr before January 1, 1984, then, as of such date, such option to purchase the Leased Premises from Orr shall be automatically assigned to Amjems as of January 1, 1984. Fairwood, for itself and on behalf of any assignee of Fairwood which succeeds to Fairwood's position as landlord under the Lease, agrees to execute any and all documents required by Amjems (which documents shall be in form and content reasonably satisfactory to Amjems) to confirm the assignment of the option to purchase the Leased Premises from Orr on or before January 10, 1984. If Fairwood assigns the option to purchase the Leased Premises from Orr to an assignee which succeeds to Fairwood's position as landlord under the Lease, then Fairwood agrees to notify Amjems of such assignment at least 5 days prior to the date of such assignment.

On June 5, 1982 Amjems' counsel wrote Orr, requesting consent to the proposed Amjems sublease. Orr objected to the terms of the proposed sublease in part because the term, with options, was extended approximately twenty-six years beyond the term of the Prime Lease. Amjems took possession of the premises on June 9, 1982. Neither Amjems nor Fairwood ever informed Orr that a closing had taken place or that the sublease had been executed. On July 9, 1982, Orr's counsel forwarded to Amjems a proposed Consent and Agreement to Sublease which basically required the terms of the sublease to be consistent with those of the Prime Lease. Amjems objected to Orr's proposed consent terms and declined to execute the Consent. At that time Orr's consent was not pursued further.

After taking possession of the premises on June 9, 1982, Amjems remained in continuous possession until the present time. Since October 4, 1982 Amjems made the rental payments due under the Prime Lease and sublease directly to Orr. The rental checks bore the name Atlas Paper Mills.

At trial, evidence was presented that Fairwood had made a previous assignment of the option to Howard M. Ruskin (Ruskin) on November 21, 1983. On November 22, 1983, Ruskin exercised the option. On that date, Orr objected to Fairwood's assignment of the option to Ruskin as the assignment had been completed without Orr's consent. Despite Orr's objection to the assignment, Orr and Ruskin executed a real estate contract pursuant to which the subject property was conveyed on February 8, 1984.

On January 3, 1984, pursuant to the assignment from Fairwood, Amjems exercised the Option Agreement. On February 8, 1984, when Orr and Ruskin closed the sale of the property Amjems reasserted its claim and presented the June 9, 1982 Letter Agreement to Orr for the first time. Be-

lieving that Amjems' claim was invalid, Orr consummated the closing with Ruskin.

## CONCLUSIONS OF LAW

The threshold question presented by this case is whether Orr was required to consent to any transfer or assignment of the Option Agreement. Amjems asserts that because the Option Agreement contained no prohibitory or restrictive language, Orr's consent was not needed in order to assign the option. It is Orr's position that Paragraph 15 of the Prime Lease requiring consent applies to the Option Agreement as well.

Florida law provides that simultaneously executed contracts which are part of the same transaction and which refer to each other are considered together in determining their meaning and effect. *Popwell v. Abel*, 226 So.2d 418, 421 (Fla. 4th DCA 1969) (citing *Taylor v. America National Bank of Pensacola*, 63 Fla. 631, 57 So. 678 (1912)). Upon review of the relevant portions of the documents, it appears that Paragraph 23 of the Prime Lease incorporates the Option Agreement and Paragraph 15 requires Orr's consent to any assignment of the "Lease Agreement or any interest hereunder." The Option Agreement itself refers to the Prime Lease in the introductory paragraph, in Paragraphs 3, 4, and 5, and in the following clause:

> WHEREAS, in connection with said Lease Agreement, Lessor and Lessee have agreed that Lessee shall have an option to purchase the Premises....

■ As both the Option Agreement and Lease Agreement refer to each other and because the parties executed both documents simultaneously, the Court finds that the two documents should be construed together. *See Hughes v. Professional Insurance Corp.*, 140 So.2d 340 (Fla. 1st DCA 1962). The Court further finds that the parties intended to incorporate the Option Agreement into the Prime Lease for the purposes of making the provisions of one applicable to the other. It follows, therefore, that the consent provisions of Paragraph 15 apply to the Option Agreement, making Orr's consent a requirement to the assignment of the Option Agreement.

The Plaintiff alternatively argues that even if Orr's consent was required, it was impliedly if not expressly given. The Court finds that the Plaintiff failed to adduce sufficient evidence at trial to sustain a finding that Orr expressly consented to the assignment of the Option Agreement to Amjems. In order to prevail as to this theory, Amjems must have shown that Orr waived the covenant requiring written consent to the assignment of the option or in other words impliedly consented to the transfer.

■ A lessor may waive his right to assert a covenant requiring consent before assignment if it accepts rent from the assignee and permits the assignee to remain in possession with knowledge or full notice of the assignment. *Philpot v. Bouchelle*, 411 So.2d 1341 (Fla. 1st DCA 1982); *see also Farmers Bank & Trust Co. v. Palms Publishing Co.*, 86 Fla. 371, 98 So. 143 (1923); *Moskos v. Hand*, 247 So.2d 795 (Fla. 4th DCA 1971). There is no question that Amjems has been in possession of the premises from June 9, 1982 until the present time; nor is there a question that Orr accepted rent payments from Amjems for this same time period. The question then becomes whether or not Orr permitted Amjems to remain in possession of the premises and accepted rental payments from Amjems with knowledge and/or full notice of the assignment of the sublease and/or option from Fairwood to Amjems.

■ One entitled to notice of assignment of a leasehold may be presumed to have had knowledge of the assignment by actual, implied, or constructive notice. *McCausland v. Davis*, 204 So.2d 334 (Fla. 2d DCA 1967). Actual notice stems from direct information or actual knowledge of the assignment. *Dunn v. Stack*, 418 So.2d 345 (Fla. 1st DCA 1982); 204 So.2d at 335. Other than conversations with Amjems' attorney that assignment negotiations were being conducted, Amjems did not produce

any evidence at trial which shows Orr had actual knowledge of the assignment. The uncontroverted facts show that in June of 1982 Fairwood and Amjems requested Orr's consent to the assignment of the sublease. At that time Orr refused to consent to the assignment. Orr had no actual knowledge of the subsequent assignment of the sublease. Therefore, Orr waived its right to consent only if it had implied or constructive notice of the assignment.

■ Constructive notice is an inference of knowledge by operation of law, as under a recording statute. *McCausland,* 204 So.2d at 335. "It is a fiction that is imputed by the law primarily for the promotion of sound policy." *Joseph Burcheck Construction Corp. v. W.E. Music,* 420 So.2d 410, 412–13 (Fla. 1st DCA 1982). Amjems asserts that Orr had constructive notice of Fairwood's assignment of the sublease and option as the assignment was recorded. However, constructive notice is only implied to creditors and subsequent purchasers. *Dunn,* 418 So.2d at 349. As the owner of the property, Orr may not be said to have had constructive notice of the assignment merely because it was recorded.

■ Implied notice is inferred from the fact that a person had the means of knowledge, which was his duty to use and which he did not use. *Id.; McDonald v. McGowan,* 402 So.2d 1197 (Fla. 5th DCA 1981). The duty to use the means of knowledge to acquire the information has been referred to as a duty of inquiry. *Industrial Supply Corp. v. Bricker,* 306 So.2d 133 (Fla. 2d DCA 1975).

The principle applied in cases of alleged implied actual notice is that a person has no right to shut his eyes or ears to avoid information, and then say that he has no notice; that it will suffice the law to remain willfully ignorant of a thing readily ascertainable by whatever party puts him on inquiry when the means of knowledge is at hand.

*Sapp v. Warner,* 105 Fla. 245, 141 So. 124 at 127 (1932); *see also McDonald,* 402 So.2d at 1200. This duty is imposed when such information is known which would prompt a person exercising reasonable care to acquire knowledge of the fact in question. *Garner v. Pearson,* 545 F.Supp. 549 (M.D.Fla.1982).

■ Amjems relies on the fact that since it had been in open and continuous possession of the premises since June 9, 1982 to show that Orr had implied notice of the Fairwood/Amjems assignment. However, Amjems failed to present any evidence showing that its possession constituted the means of knowledge which would cause Orr to become aware of the assignment; nor did Amjems' present any evidence showing that Orr "closed its eyes" to information, which after proper inquiry would have given Orr notice of the assignment. The Court finds that the evidence presented fails to show that Orr had implied notice of the assignment, nor was Orr aware of any information which imposed a duty to inquire.

■ Finding no express or implied waiver of the "consent" requirement, the Court must then determine whether the consent was unreasonably withheld. The lease specifically provides in paragraph 15 that:

Lessee may not without prior written consent of the Lessor assign this Lease Agreement or any interest hereunder or sublet the Premises or any part thereof, but Lessee shall have the right to mortgage the leasehold. Lessor's consent, however shall not be unreasonably withheld ...

The burden of proof is on a plaintiff to establish that consent to assignment was unreasonably withheld. *Fernandez v. Vazquez,* 397 So.2d 1171 (Fla. 3d DCA 1981). The lessor's decision to withhold consent shall be examined in light of the standards of good faith and commercial reasonableness. *Id.*

Whether a landlord breached the lease by acting unreasonably in withholding consent of a commercial tenant is to be determined ... according to the facts of that case. The following factors are

among those which a jury may properly consider in applying the standards of good faith and commercial reasonableness: (a) financial responsibility of the proposed subtenant, (b) the "identity" or "business character" of the subtenant, i.e., suitability for the particular building, (c) the need for alteration of the premises, (d) the legality of the proposed use, and (e) the nature of the occupancy, i.e., office, factory, clinic, etc. Denying consent solely on the basis of personal taste, convenience or sensibility or in order that the landlord may charge a higher rent than originally contracted for have been held arbitrary reasons failing the tests of good faith and reasonableness under commercial leases.

*Id.* at 1174 (citations omitted); *see also Catalina Inc. v. Biscayne Northeast Corp.,* 296 So.2d 580 (Fla. 3d DCA 1974); *Chanslor-Western Oil & Development Co. v. Metropolitan Sanitary District,* 131 Ill. App.2d 527, 266 N.E.2d 405 (1970).

 To support its theory that Orr knew of the sublease and unreasonably withheld its consent, Amjems relies on a letter of June 5, 1982 in which Orr requested consent to the proposed Amjems sublease. Not only did Amjems fail to demonstrate that this request was also a request for consent to the assignment of the option, but Amjems did not present evidence of any other request for consent. The question then is whether Orr unreasonably withheld its request to the sublease submitted on June 5, 1982 in light of the tests of good faith and commercial reasonableness. The facts indicate that Orr refused to give its consent largely because the term of the sublease was extended approximately twenty-six years beyond the date of the Prime Lease. Amjems did not produce any evidence whatsoever to show that the Defendant withheld consent for any reason other than the one stated above. Furthermore, Amjems failed to show that the motivation to withhold consent was based on personal taste, convenience, or a desire to charge a higher rent. The Court finds that Orr's decision to withhold consent was based on commercial reasonableness and

was made in good faith. Accordingly, the Court further finds that Orr did not unreasonably withhold its consent to the sublease submitted by Amjems on June 5, 1982.

Based upon the above Findings of Fact and Conclusions of Law, it is hereby

ORDERED AND ADJUDGED that judgment shall be entered in favor of the Defendant, F.R. ORR CONSTRUCTION COMPANY, INC., and against the Plaintiff, AMJEMS, INC.