**In re AGI SOFTWARE, INC., Debtor.**

**EMPLEXX SOFTWARE CORP., Plaintiff,**

v.

**AGI SOFTWARE, INC., Bruce H. Levitt, Chapter 7 Trustee and Aptron Corporation, Defendants.**

Bankruptcy No. 94–28401.
Adv. No. 95–2617.

United States Bankruptcy Court,
D. New Jersey.

Nov. 3, 1995.

Riker, Danzig, Scherer, Hyland & Perretti by Warren J. Martin, Jr., Louise A. Johnson, Morristown, New Jersey, for Plaintiff.

Mudge, Rose, Guthrie, Alexander & Ferdon by Claudia A. Costa, Parsippany, New

Jersey, for Defendant Bruce H. Levitt, Chapter 7 Trustee for AGI Software, Inc.

Ravin, Sarasohn, Cook, Baumgarten Fisch & Baime, P.C. by Mary Ellen Tully, Roseland, New Jersey, for Defendant Aptron Corporation.

## OPINION

ROSEMARY GAMBARDELLA, Bankruptcy Judge.

## I. ISSUES PRESENTED

The matters before the court are:

(1) a motion for summary judgment brought by Emplexx Software Corp. ("Emplexx") against AGI Software, Inc. ("AGI" or "Debtor"), Bruce H. Levitt, the Chapter 7 Trustee ("Trustee") and Aptron Corp. ("Aptron") in connection with the instant adversary proceeding.

(2) a motion to vacate the automatic stay brought by Emplexx. A hearing on these motions was conducted on August 29, 1995. The following constitutes this Court's findings of fact and conclusions of law.

## II. STATEMENT OF FACTS

The Debtor is a New Jersey corporation comprised of approximately 25 universities and colleges located primarily in the Northeast. The Debtor is the owner of a comprehensive software package (collectively, the "Software") designed to automate the day-to-day administrative functions of its member universities.

In order to market the Software, principals and employees of the Debtor created a spin-off corporation named Emplexx. *See* Emplexx's Memo of Law, at 3.

On or about October 30, 1992, the Debtor and Emplexx executed an "Agreement Relating to Software License and Business Relations" (the "Reorganization Agreement"). *See* Exh. A, Cert. of Claudia A. Costa ("Costa Cert."), filed August 16, 1995. As part of the Reorganization Agreement, and as an Exhibit thereto, the Debtor and Emplexx agreed to execute a "Software License Agreement" ("License Agreement"). *See* Exh. B, Reorganization Agreement. The License Agreement provides, *inter alia*, that the Debtor

grants to Emplexx "a perpetual, irrevocable, transferable (as provided herein), non-exclusive (subject to the limitations contained herein) license to use, modify, enhance, develop, sublicense, sell and otherwise exploit, the Software throughout the entire world." *See* License Agreement, ¶ 1. The software which is the subject of the license includes, among other things, student accounting and administration, admissions, financial aid, alumni/development and other programs relevant and necessary for the day to day operations of a college or university.

In addition to the license, Emplexx agreed to assume certain obligations of the Debtor, such as capital leases, operating leases and maintenance agreements. *See* Reorganization Agreement, ¶ 1.3; *see also* Assignment and Assumption Agreement, attached to Reorganization Agreement as Exhibit F.

In exchange, the Debtor received the right to collect royalties from Emplexx's sublicense of the Software. The royalties are to be calculated on a quarterly basis and reported to the Debtor in statements showing "Cumulative Software Revenues" received by Emplexx during that period. *See* License Agreement, ¶ 4(A)–(D). The License Agreement is silent as to whether those statements must be written, or whether they may be oral.

The License Agreement further provides that the Debtor will not grant any other license of the Software for a period of ten (10) years (the "Exclusive License Period"), expiring October 30, 2002. *See* License Agreement, ¶ 2(a). The License Agreement also provided that, for a period of three (3) years, expiring October 30, 1995 (the "Non-conveyance Period"), the Debtor would not transfer its ownership, or any portion of its remaining interest, in the Software, or controlling interest in the Debtor itself, unless Emplexx was afforded an option to purchase the Software. *See* License Agreement, ¶ 2(c).

The Debtor and Emplexx also agreed to protect the Software and any other proprietary information as a trade secret and to cooperate with respect to maintaining copy-

right and patent protections of the Software. *See* License Agreement, ¶ 5(A)–(B).

The License Agreement also provided that the parties intend that Emplexx "shall have all rights afforded to licensees under Section 365(n) of the Federal Bankruptcy Code in connection with the bankruptcy" of the Debtor. *See* License Agreement, ¶ 7(D).

The Debtor and Emplexx had the mutual right to "terminate this License Agreement by written notice to [the breaching party] in the event of any breach . . . of its obligations hereunder which breach is not cured within thirty (30) days after written notice thereof. . . ." *See* License Agreement, ¶ 8(A)–(B).

The License Agreement contains an integration clause, which provides that the Agreement is the final written expression of all of the agreements between the Debtor and Emplexx, superseding all understandings and negotiations between the Debtor and Emplexx. The parties agreed that there were no additional supplemental agreements between them related to the matters contained in the Agreement, unless specifically referred to in the Agreement. All modifications or additions are required to be in writing and signed by the parties. *See* License Agreement, ¶ 10(B).

The License Agreement is controlled by Florida law. *See* License Agreement, ¶ 10(C). The License Agreement further provides that any controversy or claim arising out of the Agreement or its breach would be settled by arbitration. *See* Agreement, ¶ 10(H).

By letter dated December 15, 1992, Emplexx notified two lessors who had leased furniture to the Debtor, and whose leases were expressly assumed by Emplexx, that the lessors could reclaim their furniture, and that Emplexx was being dunned for the Debtor's bills. *See* Costa Cert., Exh. C; Assignment and Assumption Agreement. The Debtor contacted Emplexx to demand assurances that Emplexx would fulfill its obligations under the Reorganization Agreement to assume payment of the leases. *See* Letter from James J. Higgins, counsel to the Debtor, to C. Fritz Reichert, President of Emplexx, dated December 22, 1992, attached to

Costa Cert. as Exh. D. Emplexx responded that its financial situation was such that it was considering liquidation pursuant to Chapter 7 of the Bankruptcy Code. Emplexx informed the Debtor that it had depleted all of its financial resources, laid off all of its employees and did not appear to be able to generate cash in order to go forward with the Reorganization Agreement. The Debtor, through its counsel James J. Higgins, further contacted Emplexx to advise that "As Lessors are pressing AGI [Debtor] for payment, I need to know before 4:00 p.m. [January 5, 1993] precisely what your client's position is. Failure to confirm in writing that Emplexx Software Corporation will comply with its commitments under the Assignment and Assumption Agreement will lead me to the unequivocal conclusion that Emplexx has no intention of living up to its contractual commitments and to recommend immediate commencement of an arbitration proceeding against Emplexx Software Corporation for its obvious breach of the 'Agreement Relating to Software License and Business Relations'". *See* letter from James J. Higgins, counsel to Debtor, to Jonathan E. Cole, counsel to Emplexx, dated January 4, 1993.

Emplexx proposed "unwinding" and "terminating" the software license. *See* Letter from Jonathan E. Cole, counsel to Emplexx, to James J. Higgins, dated January 7, 1993 attached to Costa Cert. as Exh. E.

By letter dated February 5, 1993 ("Default Letter"), the Debtor asserted that Emplexx had defaulted under the Reorganization Agreement and the Assignment and Assumption Agreement by failing to make payments on the leases Emplexx assumed from the Debtor. The Debtor also asserted that Emplexx had breached the License Agreement by failing to deliver quarterly statements of Cumulative Software Revenues. The Debtor further asserted that Emplexx, by virtue of its impecunious situation, had breached the "implied marketing covenant" under the Agreement. *See* Costa Cert., Exh. G. Emplexx responded to the alleged "Default Letter" by letter dated March 16, 1993 disputing the alleged defaults and breaches of the Agreements. *See* Exh. E to the Complaint.

On the same day, March 16, 1993, the Debtor wrote a second letter to Emplexx, notifying Emplexx that, due to Emplexx's failure to cure its alleged default, and due to alleged material breaches by Emplexx, the Debtor had terminated the License Agreement as well as the Reorganization Agreement and the Assignment and Assumption Agreement ("Termination Letter"). *See* Costa Cert., Exh. H. The Debtor further demanded payment of $188,143.30, plus interest, for Emplexx's failure to assume and pay the existing leases. *See* Termination Letter, at 2. The Debtor did not commence any arbitration proceeding against Emplexx with respect to alleged breaches. Emplexx responded to the Termination Letter by letters dated March 19, 1993 and March 29, 1993, alleging that the Agreements, including the License Agreement, were still in effect. *See* Exh. G to the Complaint.

Emplexx alleges that, on numerous occasions, it made oral reports to Margaret F. Plympton, AGI's President, informing AGI that no royalties were owing. *See* Emplexx's Memoranda of Law, at 8–9. Emplexx alleges that AGI never objected to the form of the reports. *See Id.* at 9. In response to AGI's demand for written reports, Emplexx provided the Debtor with written quarterly reports on September 30, 1993. *See* Exh. I to the Complaint.

On October 22, 1993, the Debtor entered into a new Software Licensing Agreement with Aptron Corporation, formerly known as APT Computer Solutions, Inc. ("Aptron License Agreement") which granted Aptron substantially the same license as the Debtor had granted to Emplexx. *See* Aptron License Agreement, Costa Cert., Exh. I.

Emplexx sought arbitration before an American Arbitration Association panel in Florida, commencing December 22, 1993. *See* Costa Cert., Exh. J. While discovery was conducted in the arbitration proceeding, the matter was stayed on December 6, 1994 when the Debtor filed its petition for liquidation under Chapter 7 of the Bankruptcy Code. On December 30, 1994, Bruce H. Levitt was appointed Chapter 7 trustee by the United States Trustee.

On or about April 5, 1995, Emplexx Software Corporation ("Emplexx") filed a motion for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) alleging that Emplexx lacked adequate protection with respect to its interest in the certain Software License Agreement (the "Agreement") it entered into with AGI on October 30, 1992. Both AGI and Aptron Corporation ("Aptron") filed timely objections thereto.

Subsequently, the parties engaged in a status and scheduling conference before this Court which resulted in a Consent Order being filed with the Court carrying Emplexx's motion to lift the automatic stay to August 29, 1995 at 2:00 p.m. and setting forth a scheduling order for further submissions to the Court by the parties.

On July 24, 1995, Emplexx filed a Verified Complaint for Declaratory Judgment of Rights in Software License Agreement, for Enforcement of Exclusivity Rights under § 365(n) of the Bankruptcy Code and for permanent injunction against the Defendants' use of software (the "Complaint"). The Complaint names AGI, the Trustee and Aptron as defendants (collectively, the "Defendants"). The Complaint contains two counts. Count One, *inter alia*, seeks declaratory judgment as to the effectiveness of the Licensing Agreement on the date of the filing of the petition, Emplexx's right to exercise its rights under 11 U.S.C. § 365(n), and Emplexx's right to enforce the Exclusivity License Period under the Licensing Agreement. Count Two seeks, *inter alia*, declaratory judgment that Aptron has infringed on Emplexx's License by acting under the Aptron License Agreement and that Emplexx is entitled to enforce the Exclusivity License Period under the Licensing Agreement. Simultaneously with the filing of the Complaint and before the matter was joined by the filing of Answers by the Defendants, Emplexx filed a Notice of Motion for Summary Judgment on the Complaint.

Emplexx filed this Motion for Summary Judgment to enforce Emplexx's rights under the License Agreement and to prohibit Debtor from continuing licensing the Software to Aptron. In the alternative, Emplexx seeks relief from the automatic stay, so that it may

resume arbitration to protect its rights under the License Agreement.

On August 17, 1995, Aptron filed an Answer, Affirmative Defenses and Counterclaim. Therein, Aptron seeks dismissal of the Complaint as to said Defendant. By its Counterclaim, Aptron asserts that Emplexx willfully and maliciously interfered with current business relations and future marketing prospects of AGI and Aptron, impaired Aptron's reasonable expectations of economic gain, tortiously breached its duty of good faith and fair dealing, tortiously interfered with Aptron's economic advantages and defamed Aptron's business reputation. By its Counterclaim, Aptron seeks punitive damages, compensatory damages, consequential damages, including lost business profits, prejudgment and post-judgment interest, attorneys' fees and costs of suit.

## III. DISCUSSION

### A. Emplexx's Motion for Summary Judgment

#### 1. Legal Standard for Summary Judgment.

■ Rule 56 of the Federal Rules of Civil Procedure 56, made applicable to Adversary Proceedings by Federal Bankruptcy Rule 7056, provides in pertinent part:

(c) *Motion and Proceedings Thereon* ... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). The party moving for summary judgment ("Movant") has the burden of establishing the nonexistence of any "genuine issues of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Fairbanks, Morse & Co. v. Consolidated Fisheries Co.,* 190 F.2d 817, 824 (3d Cir.1951).

■ The Court's role is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty*

*Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In determining the outcome of a summary judgment motion:

the court must view all inferences in a light most favorable to the non-moving party, *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994 [8 L.Ed.2d 176] (1962); *Continental Ins. Co. v. Bodie,* 682 F.2d 436, 438 (3d Cir.1982), must resolve all doubt against the moving party, *Gans v. Mundy,* 762 F.2d 338, 341 (3d Cir.1985), *cert. denied,* 474 U.S. 1010, 106 S.Ct. 537 [88 L.Ed.2d 467] (1985), and must take as true all allegations of the nonmoving party that conflict with those of the movant, *Anderson,* [477 U.S. at 253–55] 106 S.Ct. at 2513. In addition, a plaintiff seeking summary judgment must demonstrate the absence in the record of a prima facie defense. The evidence must be considered in light most favorable to the defendant. *Baker v. Lukens Steel Co.,* 793 F.2d 509, 511 (3d Cir.1986).

*Kronmuller v. West End Fire Co. No. 3,* 123 F.R.D. 170, 173 (E.D.Pa.1988).

#### 2. Presentation of the Arguments.

The primary issue is whether the License Agreement was still in effect as of the date of the filing of Debtor's Chapter 7 petition. The critical consideration in determining whether the License Agreement was effective is whether, as a matter of law, the License Agreement stands alone, as a separate, independent agreement from the Reorganization Agreement or the Assignment and Assumption Agreement, such that breach of one Agreement does not affect the effectiveness of the other. Emplexx denies that it materially breached the Reorganization Agreement prior to the filing of the bankruptcy. Although Emplexx admits that it failed to make lease payments under the terms of the Assignment and Assumption Agreement, Emplexx argues that it was required post-closing only to discharge AGI from its obligations under those leases. Emplexx further argues that the failure to make lease payments does not result in a breach of the Reorganization Agreement, nor does it result in a breach of the License Agreement. Emplexx further contends that, even if it

materially breached the Reorganization Agreement, that breach is irrelevant to the effectiveness of the License Agreement. *See* Emplexx's Reply Memorandum of Law, at 11.

If this court determines that the License Agreement is a separate Agreement, such that breach of the Reorganization Agreement, or the Assignment and Assumption Agreement, does not constitute breach of the License Agreement, then this Court must determine whether Emplexx breached the License Agreement by failing to provide written statements of Cumulative Software Revenues before February 5, 1993, the date of the alleged Default Letter. Emplexx alleges that no written statement was due by February 5, 1993, and even if a statement was due, Emplexx provided frequent oral reports to AGI's President, Margaret Plympton. *See* Emplexx's Memorandum of Law, at 8–9. The License Agreement is silent as to whether the Cumulative Software Revenue statements may be oral or are required to be written. Emplexx states that AGI never objected to the form of those statements.

Assuming that the Cumulative Software Revenue statements were required to be in writing, this Court must determine whether Emplexx's failure to provide written statements was a material breach. If it was, then AGI had the right to terminate the License Agreement. AGI terminated the License Agreement pursuant to the terms of the License Agreement. If it was not, then AGI acted improperly when it purported to terminate the License Agreement. Thus, the License Agreement would still be in effect at the time of the filing of the petition. The Trustee concedes that he has neither assumed nor rejected the License Agreement. Since it has been more than sixty (60) days since the order for relief, the license is deemed rejected by operation of law. *See* 11 U.S.C. § 365(d)(1). Emplexx, as licensee, should be permitted under § 365(n) to enforce the License Agreement, to the extent it was effective on the date immediately prior to the filing of the petition.

If, however, this Court determines that the License Agreement is not separate from the Reorganization Agreement and the Assignment and Assumption Agreement, but rather a part thereof, and that breach of the Reorganization Agreement and Assignment and Assumption Agreement constitutes breach of the License Agreement, then because such breach occurred pre-petition, there was no valid agreement for the Trustee to assume or reject. Therefore, Emplexx's Motion for Summary Judgment must be denied and declaratory judgment should be entered against Emplexx on its motion to assert rights under § 365(n).

**3. The License Agreement is Not Separate and Independent from the Reorganization Agreement and the Assignment and Assumption Agreement.**

The License Agreement and the Assignment and Assumption Agreement are not completely separate and independent agreements from the Reorganization Agreement. Under Florida law,[1] the Court should construe the Reorganization Agreement, the Assignment and Assumption Agreement and the License Agreement as a single agreement. When two or more instruments relating to the same transaction are executed simultaneously, those instruments should be construed together. *See Central National Bank v. Palmer,* 806 F.Supp. 253, 256 (M.D.Fla.1992); *Amjems, Inc. v. F.R. Orr Constr. Co.,* 617 F.Supp. 273, 277 (S.D.Fla. 1985). Where the instruments contain cross-references and other evidence that they are functionally interconnected, those instruments must be construed as a single agreement. *Clayton v. Howard Johnson Franchise Systems, Inc.,* 954 F.2d 645, 649 (11th Cir.1992); *Overseas Private Investment Corp. v. Metropolitan Dade County,* 826 F.Supp. 1564, 1578 (S.D.Fla.1993), *rev'd in part on other grounds,* 47 F.3d 1111 (11th Cir.1995).

Under Florida law, the License Agreement and the Assignment and Assumption Agreement must be construed as part of the Reorganization Agreement. The License Agree-

---

1. The parties stipulate that the Reorganization Agreement and its exhibits are governed by Flori- da law.

ment is attached to the Reorganization Agreement as Exhibit B. Emplexx argues that Exhibit B to the Reorganization Agreement merely shows the form of the proposed Software License Agreement, and that its only obligation under the Reorganization Agreement was to execute the License Agreement. Once the License Agreement was executed, Emplexx argues, its duties under the Reorganization Agreement were satisfied. *See* Emplexx's Reply at 10. Emplexx also argues that once the Assignment and Assumption Agreement, attached to the Reorganization Agreement as Exhibit F, was executed and delivered, paragraph 1.3 of the Reorganization Agreement had been performed. Paragraph 1.3 of the Reorganization Agreement provides:

AGI will assign to ESC all of AGI's rights under (including rights to deposits or prepayments), and ESC will assume the obligations of AGI pursuant to, certain capital leases, operating leases and maintenance agreements listed and described on Exhibit E annexed hereto (the "AGI Operating Agreements"), which assignment and assumption shall be effected pursuant to that certain Assignment and Assumption Agreement, in the form annexed hereto as Exhibit F, to be executed and delivered by ESC and AGI.

Emplexx further argues that the integration clause of ¶ 10B of the License Agreement provides that the License Agreement executed by the parties is the "Entire Agreement" and that there are no supplemental agreements between the parties. A closer reading of ¶ 10B states in relevant part:

The parties specifically represent, each to the other, that there are no additional supplemental agreements between them related in any way to the matters herein contained *unless specifically included or referred to herein.*

(emphasis added). The Reorganization Agreement was specifically referred to in the recitals in the Background section of the Software License Agreement: "The license to the Software granted hereby is granted pursuant to the Reorganization Agreement." Paragraph 1.3 of the Reorganization Agreement refers to the obligations undertaken by Emplexx under the Assignment and Assumption Agreement.

Emplexx also argues that, because the License Agreement has its own procedure for termination upon default, it must stand separate from the Reorganization Agreement or any other agreement. *See* Emplexx's Reply Memorandum of Law, at 8. The termination provision states:

Licensor may terminate this License Agreement by written notice to Licensee in the event of any breach of the Licensee of its obligations *hereunder* which breach is not cured within thirty (30) days after written notice thereof from Licensor to Licensee.

License Agreement, ¶ 8A (emphasis added). Although persuasive, Emplexx's argument must ultimately be rejected. When read in conjunction with the integration clause, the termination clause must also be interpreted as incorporating the obligations contained in all agreements referenced in the License Agreement, including those contained in the Reorganization Agreement.

Finally, Emplexx's own filings state that the License Agreement must be read in light of the Reorganization Agreement. Emplexx's Motion for Relief from Stay, which was heard concurrently with this motion, states:

On or about October 30, 1992, debtor, AGI Software, Inc. ("AGI") and Emplexx entered into an agreement relating to software license and business relations, whereby AGI granted Emplexx an exclusive perpetual, worldwide, transferrable license . . .

*See* Aff. of C. Fritz Reichert, ¶ 3.

In its Statement of Claim before the American Arbitration Association in Florida, Emplexx stated that the License Agreement is "incorporated [in the Reorganization Agreement] by reference and made a part thereof." *See* Emplexx's Statement of Claim, at 5, attached as Exh. C to Cert. of Thomas Makosky in Opposition to Motion for Relief from the Automatic Stay.

For these reasons, this Court concludes that the License Agreement is inextricably linked to the Reorganization Agreement and

the Assignment and Assumption Agreement, and that the License Agreement should not be separately construed from the Reorganization Agreement.

### 4. Emplexx Materially Breached the Reorganization Agreement, and Such Breach Constitutes Breach of the License Agreement.

■ Emplexx materially breached the Reorganization Agreement when it failed to make payments under the Assignment and Assumption Agreement which it executed in connection with the Reorganization Agreement. Emplexx admits that it failed to make required lease payments, but disputes that that failure has any effect on the effectiveness of the Reorganization Agreement and the License Agreement. Emplexx argues that it was obligated under the Assignment and Assumption Agreement to discharge AGI from its obligations under those leases. Failure to pay the leases, Emplexx argues, was not a breach of its agreement with the Debtor (so long as AGI was discharged), but only a breach of its obligation to the lessors.

■ Emplexx further contends that, even if it materially breached the Reorganization Agreement, that breach is irrelevant to the effectiveness of the License Agreement. *See* Emplexx's Reply Memorandum of Law, at 11. As discussed above, however, the Reorganization Agreement and the License Agreement are inextricably linked. Breach of the Reorganization Agreement results in a failure of consideration for the Debtor's agreement to grant Emplexx a license.

Emplexx argues that, even if it breached the Reorganization Agreement, the License Agreement was supported by consideration, the promise of royalties to be paid for sublicense of the Software. The License Agreement provides:

> In consideration of the grant license hereunder, Licensee shall pay to Licensor a Royalty equal to the percentages of "Cumulative Software Revenues

> . . . . .

License Agreement, ¶¶ 1, 4.

■ In response, the Trustee argues that the Reorganization Agreement must be read in its entirety, and when taken as a whole, breach of Emplexx's obligations under the Reorganization Agreement resulted in a lack of consideration for entering into the License Agreement. *See* Trustee's Letter Brief in Further Opposition, filed August 28, 1995, at 6. The Trustee argues that Emplexx's interpretation of the License Agreement permits the Debtor to obtain the benefits of the license without having to do any more than "pick up the phone and inform AGI that no sales had been made." The Trustee argues that any such agreement would fail for lack of consideration. *Id.* at 6. Failure of consideration is grounds for termination of the License Agreement. *See Paul Revere Life Ins. Co. v. Dietz*, 785 F.Supp. 970, 972 (M.D.Fla.1992) (rescission available where failure of consideration results from breach of a dependent contractual covenant). Because consideration for entering into the License Agreement failed, Debtor had the right to terminate the License Agreement.

### 5. The License Agreement Was Effectively Terminated Pre–Petition and May Not Be Assumed or Rejected by the Trustee.

■ The License Agreement provides for either party to terminate that agreement upon breach by the other party:

> Licens[or/ee] may terminate this License Agreement by written notice to Licens[or/ee] in the event of any breach by Licens[or/ee] of its obligations hereunder which breach is not cured within thirty (30) days after written notice . . .

License Agreement, ¶ 8(a), (b).

On February 5, 1993, the Debtor gave written notice to Emplexx that the Debtor was terminating the License Agreement because of Emplexx's failure to pay the leases it assumed from the Debtor under the Assignment and Assumption Agreement as well as its failure to provide written Cumulative Software Revenue statements. *See* Default Letter, Costa Cert., Exh. G. Emplexx failed to respond to Debtor within thirty (30) days, and on March 16, 1993, Debtor terminated the License Agreement. *See* Termination Letter, Costa Cert., Exh. H.

■ Debtor properly terminated the License Agreement in accordance with its terms. The License Agreement was terminated, at the latest, on March 16, 1993. Debtor filed its petition on December 6, 1994. The License Agreement was terminated pre-petition. Once an agreement is terminated pre-petition, the bankruptcy court may not resurrect the agreement. *Matter of Triangle Laboratories, Inc.,* 663 F.2d 463, 467–68 (3d Cir.1981); *In re Volpe Enterprises, Inc.,* 23 B.R. 818, 820 (Bankr.S.D.Fla.1982). Thus, because the License Agreement was effectively terminated pre-petition, there was no agreement for the Trustee to assume or reject, pursuant to § 365 of the Bankruptcy Code. *See Moody v. Amoco Oil Co.,* 734 F.2d 1200, 1212 (7th Cir.), *cert. denied,* 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 321 (1984).

### 6. Emplexx's Motion for Summary Judgment Should be Denied; Declaratory Judgment Should Be Entered Against Emplexx on Counts One and Two.

This matter is ripe for summary judgment. The sole issue before this Court is whether, as a matter of law, the License Agreement should be construed independently of the Reorganization Agreement. As a matter of Florida law, the License Agreement must be interpreted in conjunction with the Reorganization Agreement. Emplexx breached the Reorganization Agreement when it failed to pay certain leases it assumed under the Assignment and Assumption Agreement. This breach of the Reorganization Agreement was a material breach which resulted in a failure of consideration for granting the license. Failure of consideration is grounds for terminating the License Agreement, which the Debtor did on March 16, 1993. Debtor filed its petition on December 6, 1994. There was no agreement for the Trustee to assume or reject. Accordingly, Emplexx's motion for summary judgment should be denied on Counts One and Two. Declaratory judgment should be entered against Emplexx on Count One of the Complaint which seeks to assert rights under § 365(n). Declaratory judgment should also be entered against Emplexx on Count Two, which seeks to enjoin Aptron from exercising its rights under the Aptron Licensing Agreement.

### B. Emplexx's Motion for Relief from the Automatic Stay

■ The second matter before the Court is Emplexx's motion for relief from stay because its interests under the License Agreement are not being adequately protected.

### 1. Legal Standard for Granting Relief from the Automatic Stay.

Section 362(d) of the Bankruptcy Code provides:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . ., such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization

11 U.S.C. § 362(d).

Pursuant to § 362(d)(1), relief from the stay will be granted for cause, including, but not limited to, lack of adequate protection of the creditors' interest in the property.

Adequate protection is not defined in the Bankruptcy Code. Section 361, however, sets forth three non-exclusive examples of adequate protection:

**Adequate protection.** When adequate protection is required under section 362, 363, 364 of this title of an interest of an entity in property, such adequate protection may be provided by—

(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title or any grant of a lien under section 364 of this title results in a decrease in the

value of such entity's interest in such property;

(2) providing to such entity an additional re replacement lien to the extent that such stay, use sale, lease or grant results in a decrease in the value of such entity's interest in such property; or

(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

 The Congressional purpose of this section is to "ensure that the secured creditor receives in value essentially what he bargained for." *In re Ram Mfg. Inc.*, 32 B.R. 969, 971 (Bankr.E.D.Pa.1983) (citing H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 339, *reprinted in* 1978 U.S.C.C.A.N. 5787, 6295), *reconsideration denied,* 36 B.R. 822 (Bankr.E.D.Pa.1984).

 It is beyond dispute that the moving party must present sufficient evidence that it holds a valid perfected security interest in the subject property to be entitled to relief under § 362(d) on the basis of a lack of adequate protection. *See e.g. In re Cabrillo,* 101 B.R. 443, 450 (Bankr.E.D.Pa.1989).

**2. Emplexx is Not Entitled to Adequate Protection Because the License Agreement Which, Arguably, Granted Emplexx a Security Interest in the Source Code for the Software Was Terminated Pre-petition.**

 A party seeking relief from the automatic stay pursuant to § 362(d) must be secured creditor of the Debtor. There is no statutory requirement that unsecured creditors receive adequate protection. *See In re Lopez–Soto,* 764 F.2d 23, 26 (1st Cir.1985); *Matter of Southern Biotech, Inc.,* 37 B.R. 318, 323–324 (Bankr.M.D.Fla.1983). That secured creditors are entitled to have their interest adequately protected stems from the 5th Amendment taking clause. Emplexx is not a secured creditor of the Debtor since Emplexx breached the License Agreement pre-petition. *See* the discussion at III.A.4

and III.A.5 above. Although Emplexx arguably may have once had a security interest in the source code for the Software under the License Agreement, it lost its security interest when it breached the Reorganization Agreement and License Agreement and the Debtor properly terminated those Agreements. *See* Complaint ¶ 26, License Agreement, ¶ 7(D). Even assuming, without deciding, that Emplexx has some residual interest in the Software, such interest affords Emplexx the status of a general unsecured creditor whose claim is disputed, contingent and unliquidated.

Relief from the automatic stay is granted where a secured creditor's interest is not being adequately protected. Once the Agreements were terminated pre-petition, Emplexx retained no security interest, which is entitled to adequate protection. Therefore, Emplexx is not entitled to obtain relief from the automatic stay.

**3. Emplexx Has Failed to Show Cause To Lift the Automatic Stay.**

 Section 362(d)(1) of the Bankruptcy Code allows a party to seek relief from stay for "cause." Emplexx's sole argument is that it has filed a demand for arbitration in Florida. Before Emplexx can obtain relief from the stay and proceed with its arbitration proceeding, it must demonstrate that "cause" exists that would warrant such relief. The mere fact that Emplexx has previously filed an arbitration proceeding in Florida does not, of itself, constitute "cause" so to entitle Emplexx to pursue its claim at this time in that forum, rather than through the claims procedure in this Court.

**IV. CONCLUSION**

The matter before the Court is ripe for summary judgment. There remains no genuine issue of material fact to be decided by a fact-finder. The sole issue before this Court is whether, as a matter of Florida law, the Reorganization and License Agreements are to be independently-construed, such that a breach of the Reorganization Agreement does not affect the effectiveness of the License Agreement. As a matter of law, the Reorganization and License Agreements are not separate agreements to be independent-

ly-construed. Rather, the License Agreement must be read in light of the Reorganization Agreement, as its very existence is inextricably linked to the Reorganization Agreement. Emplexx breached the Reorganization Agreement when it failed to pay the leases it assumed under the Assignment and Assumption Agreement. Such breach results in a failure of consideration for entering into the License Agreement. Debtor effectively terminated the License Agreement pursuant to its terms. There was no agreement for the Trustee to assume or reject, and therefore, summary judgment should be entered against Emplexx on Counts One and Two of the Verified Complaint.

Emplexx's motion to vacate the automatic stay must also be denied. Because Emplexx breached the License Agreement pre-petition, there was no valid agreement in effect at the time of the filing of the petition. Thus, Emplexx is not a secured creditor, and may not seek relief from the stay for lack of adequate protection nor has other "cause" been demonstrated to entitle Emplexx to relief from the automatic stay.

An Order shall be submitted in accordance with this Opinion.